■ JAN TOWLEY, an Infant, by Her Father and Natural Guardian, WARREN TOWLEY, et al., Respondents-Appellants, v KING ARTHUR RINGS, INC., et al., Respondents, and MITCHELL K. ALTMAN, an Infant, by His Father and Natural Guardian, A. ALTMAN, Appellant.—Judgment, Supreme Court, New York County, entered October 29, 1974, in favor of the plaintiffs against the defendant Mitchell Altman and setting aside a jury verdict in favor of the plaintiffs against the defendants A. Arthur Altman and King Arthur Rings, Inc., modified, on the law, to reverse the judgment in favor of the plaintiffs against the defendant Mitchell Altman and to dismiss the complaint and otherwise affirmed, without costs and without disbursements. The plaintiff Jan Towley, a resident of Iowa who had gone to Colorado to vacation and look for work, met the defendant Mitchell Altman, a New Yorker who was also vacationing in that State. The evidence of the automobile accident in which they were involved is viewed here in the light most favorable to the plaintiff (Hoch Assoc. v Western Newspaper Union, 308 NY 461). On July 27, 1971, Altman, with Jan Towley a passenger, was operating the 1971 Chevrolet that he had driven from New York, on a curving mountain road near Boulder that he had driven in the opposite direction earlier that day. The highway had two lanes for traffic divided by a four-foot wide white line outlined by double yellow stripes. The speed limit at the point of the accident was unknown to any witness but the limit along that stretch of highway varied from 25 to 40 miles an hour. Altman was driving 45 to 50 miles an hour when, a quarter of a mile from the accident site a passenger, Kelleher, asked him to slow down, to no avail. Again she asked him to slow down, adding that they were not in a hurry. Altman assured her that it was a new car and could hold the road on the curves. The Chevrolet, rounding a left curve, was about three quarters of its width into the opposite lane when a camper-vehicle appeared about 40 feet ahead, coming from the opposite direction. Altman pulled to his right, avoiding contact with the other vehicle, but the Chevrolet went out of control. It left 52 feet of skidmarks on the blacktop portion of the road and 84 feet of marks on the gravel shoulder before it went down an embankment into a river, seriously injuring Jan Towley. Colorado has a guest statute that

imposes liability in favor of a passenger only for a driver's "negligence consisting of willful and wanton disregard of the rights of others" (Colorado Revised Statutes of 1968, § 13-9-1). The trial court correctly held it to be applicable, rather than the New York law *(Neumeier v Kuehner,* 31 NY2d 121). "To willfully and wantonly disregard the rights of others requires a consciousness of heedless and reckless conduct by which the safety of others is endangered * * * The demarcation between ordinary negligence, and willful and wanton disregard, is that in the latter the actor was fully aware of the danger and should have realized its probable consequences, yet deliberately avoided all precaution to prevent disaster. A failure to act in prevention of accident is but simple negligence; a mentally active restraint from such action is willful. Omitting to weigh consequences is simple negligence; refusing to weigh them is willful. Performance of a dangerous act willfully, under certain circumstances, as in an emergency, is permissible and will not subject the actor to liability even under the guest statute; hence, it is provided that to be actionable under that statute the conduct of the driver of the vehicle must be both willful and wanton, because a wanton act is never excusable." *(Pettingell v Moede,* 129 Col 484, 491, 492; see, also, *Coffman v Seifert,* 175 Col 224.) The evidence does not show Altman to have been of a malicious or indifferent disposition toward his passengers nor heedless of his own safety. Neither does the evidence show that he knew that he was driving unsafely. It shows, rather, that he thought that, the Chevrolet being a new car and being able to hold the road on curves, he was driving at a safe speed. The happening of the accident proves this to have been an error of judgment, but, while this constitutes negligence, it does not amount to a willful or wanton disregard *(Millington v Hiedloff,* 96 Col. 581; cf *Edelen v Simpson* [Col], 144 P 2d 986). Concur—Stevens, P. J., Lane, Nunez and Lynch, JJ.; Murphy, J., dissents in part in the following memorandum: Murphy, J. (dissenting in part). I see no reason to disturb the judgment on appeal and, accordingly, vote to affirm. The infant plaintiff, a recent Iowa high school graduate seeking work and relaxation in Colorado, was severely injured when a two-door Chevrolet Vega, driven by defendant Mitchell Altman, flipped over an embankment while descending a steep mountain road and landed in a stream. Prior to the accident one of Altman's four passengers (not plaintiff) twice requested him to reduce his speed. Altman responded by assuring her that his car was new and could hold the road. It didn't. The only factual question presented hereon, complicated somewhat by the need to apply Colorado's guest statute, is whether Altman (junior, not senior, since we all agree that the verdict against defendants A. Arthur Altman and King Arthur Rings, Inc., was properly set aside) was legally responsible. Altman met plaintiff Jan Towley and her friend Diane Kelleher a few days before the accident. He drove them around the City of Boulder, Colorado, but never outside city limits. On the day in issue Altman, his friend, Jan and Diane went "mountain climbing". A third male later joined the group and all five were in the car when it began its descent along the narrow, winding, two-lane mountain highway. Diane sat in the bucket seat next to Altman. Jan sat sideways in the rear of the car on the laps of the other two male passengers. Diane testified that Altman was driving the car at an excessive rate of speed, failed to slow down when requested to do so, crossed over the solid highway dividing line and lost control of the car when he swerved back into his own lane to avoid a camper ascending the mountain road in the adjacent lane. Jan gave similar testimony with regard to the camper and Altman's maneuvers to avoid it. Altman, supported by his friend and fellow New Yorker, Max Korda,

attributed the accident to a skid caused by the presence of gravel on the highway. On the trial Altman referred to the camper and claimed it was on his side of the road; but failed to even mention it to the investigating Colorado State Trooper, who noted 52 feet of skid marks on the blacktop portion of the highway and 84 feet of skid marks on the gravel shoulder. Altman also denied that he exceeded the highway's speed limit. Under the law of Colorado (which governs this case for the reason stated in *Neumeier v Kuehner*, 31 NY2d 121), insofar as here pertinent, plaintiffs must establish that the accident occurred because of Altman's "willful and wanton disregard of the rights of others". (Col Rev Stat, 1963, § 13-9-1.) Viewing the evidence in the light most favorable to Jan, and drawing all permissible inferences in her favor, the jury was justified in finding that Altman operated his vehicle at an excessive rate of speed, without requisite control and in blatant disregard of Diane's warnings. From his ascent, Altman knew that the curving highway was dangerous. Its two lanes were divided by a four-foot-wide white line surrounded by double yellow lines. Nevertheless, he allegedly speeded down the roadway, crossed over the center line placing himself and his guests in the direct path of a camper, and then lost control of his vehicle when he tried to return to his own lane. Such combination of intertwined factors cannot, in my view, be passed off as simple negligence, as a matter of law. In short, on the record before us, there was sufficient evidence from which to find a reckless disregard of risk amounting to willful and wanton misconduct. Accordingly, the judgment appealed from should be affirmed.