Cooke, J.
Plaintiff Jan Towley, a resident of Iowa, met defendant Mitchell Altman, a resident of New York, in Colorado where both were vacationing. On July 27, 1971, Altman, with Jan Towley and three others as passengers, was operating a 1971 Chevrolet, in the Boulder, Colorado, area, downgrade along a curving mountain two-lane road. Although the speed limit in the vicinity varied from 25 to 40 miles per hour, Altman was driving approximately 45 to 50 miles per hour and was asked by passenger Kelleher to slow down on two occasions. To the second entreaty, Altman replied that his father had "just bought him this car, it was brand new, and it could take curves great”, but he did not reduce his speed. After passing a "snake” sign indicating a curve and while rounding a left turn described by the operator as a "blind curve”, the Chevrolet was "almost all” across double-yellow lines, dividing the highway, into the opposite lane, when a camper-vehicle appeared proceeding upgrade on its proper side. Altman swerved the Chevrolet back into its right lane and lost control, the car going over the right-hand embankment, flipping over and then landing in a stream. Skid marks, attributable to the Chevrolet and measuring 52 feet on the *132 pavement and 84 feet on the shoulder, were found. Jan Towley suffered serious injuries.
The Chevrolet was registered in the name of defendant King Arthur Rings, Inc., of which defendant A. Arthur Altman, Mitchell’s father, was president. During trial, the son testified it was his father’s car.
The jury, applying Colorado law, returned a verdict for plaintiff Jan Towley in the sum of $200,000 and for her father on a derivative cause of action in the amount of $5,050. The trial court set aside the verdict as against King Arthur Rings, Inc., and A. Arthur Altman and granted the motion to set aside the verdict in favor of Jan Towley against Mitchell Altman, ordering a new trial on the ground of excessiveness unless said plaintiff stipulated to reduce the verdict to $150,-000. Jan Towley so stipulated and judgment was entered accordingly. On appeal, the majority of the Appellate Division modified the judgment, on the law, to the extent of reversing the judgment in favor of plaintiffs against defendant Mitchell Altman and dismissing the complaint. That court reasoned that under the Colorado guest statute an injured passenger can recover only if the driver’s negligence consists of "willful and wanton disregard of the rights of others” (Col Rev Stat, § 13-9-1) and that the evidence did not "show Altman to have been of a malicious or indifferent disposition toward his passengers nor heedless of his own safety.” (49 AD2d 555, 556.)
Applying Colorado law to this case, as we should (Neumeier v Kuehner, 31 NY2d 121), our inquiry extends not only to the words of the guest statute itself but, even more importantly, to the judgmental determinations of the courts of that State in regard to it. A judgment* is the law’s last word in a judicial controversy, it being the final determination by a court of the rights of the parties upon matters submitted to it in an action or proceeding (Wood v City of Salamanca, 289 NY 279, 282; Matter of Steinberg v Mealey, 263 App Div 479, 481, app dsmd 296 NY 614; Kiefer Mach. Co. v United States Bottlers Mach. Co., 108 F2d 469, 470; 46 Am Jur 2d, Judgments, § 1). The court’s opinion is a statement of the reasons on which the judgment rests (Rogers v Hill, 289 US 582, 587). Since it is only what a court adjudicates, not what it says in an opinion, that has any direct legal effect, a judgment of the court *133 controls over an opinion and, if they are at variance, the former prevails and determines the rights of the parties (People ex rel. McCanliss v McCanliss, 255 NY 456, 462; People ex rel. Metropolitan Trust Co. v Travis, 107 Misc 377, 382, affd 191 App Div 129; Macfadden v Macfadden, 49 NJ Super 356; 49 CJS, Judgments, § 22, p 51; 46 Am Jur 2d, Judgments, § 6, pp 316-317). Regardless of the manner in which the courts of Colorado may interpret willful and wanton negligence in connection with its guest statute, a review of the judgments of that State leads to the conclusion that in situations similar to that here the issue of willful and wanton negligence has been left within the province of the jury (see, e.g., Brown v Spain, 171 Col 205; Steeves v Smiley, 144 Col 5; Hennigar v Van Every, 139 Col 144; Gravitt v Sloggett, 132 Col 254; Clark v Hicks, 127 Col 25; Dameron v West, 126 Col 435).
While our own view of the quality of the testimony necessary to establish a prima facie case might be different, applying the law as it exists in Colorado to the instant facts, it cannot be said as a matter of law that the proof of willful and wanton conduct on the part of Mitchell Altman should not have been submitted to the jury. There was no proof justifying the imposition of liability on the other defendants.
The order of the Appellate Division is modified by deleting therefrom the provisions that the judgment in favor of plaintiffs against defendant Mitchell Altman be reversed and that the complaint be dismissed and by directing that the matter as between plaintiffs and said defendant be remitted to the Appellate Division for a review of the facts and, except as so modified, the order is affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Fuchsberg taking no part.
Order modified, with costs to plaintiffs only against defendant Mitchell Altman, and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

 CPLR 5011, in defining a judgment, states that "[a] judgment is the determination of the rights of the parties in an action or special proceeding and may be either interlocutory or final.”