■ ANN S. MICHAELSON, Appellant, v MARTIN A. MICHAELSON, Respondent.—Yesawich Jr., J. Appeal from that part of an order of the Supreme Court (Kahn, J.), entered June 20, 1991 in Albany County, which denied plaintiff's motion to compel defendant to comply with the terms of the parties' judgment of divorce.

Following extensive negotiations, plaintiff and defendant entered into a stipulation on the record on August 30, 1990 resolving their pending matrimonial litigation. The stipulation was incorporated but not merged into a judgment, dated October 12, 1990 and entered October 16, 1990. At issue is Supreme Court's interpretation of the judgment insofar as it provides "that the plaintiff shall receive cash and bonds equal to *50 percent of the value of the defendant's accounts held at First Albany Corporation and Shearson Lehman Hutton, Inc. as of August 30, 1990, said accounts value to be not less than $875,000.00;* and * * * that the bonds and/or cash in the above accounts shall be divided as equally as possible in a like kind division *within 15 days from the date of this judgment"* (emphasis supplied).

On August 30, 1990, defendant had bonds and cash worth $218,566.91 in his First Albany account and $707,662.94 in his Shearson Lehman account for a total of $926,229.85. Although 50% of this sum equals $463,114.92, defendant transferred only $392,500 worth of bonds and cash to plaintiff and that transfer did not occur until December 5, 1990. Between August 27, 1990 and the morning of August 30, 1990, before the stipulation was entered into, defendant wrote various checks totaling $60,502.45 on his First Albany account; of this

amount, $35,968.75 went to satisfy defendant's legal fees. Defendant contends that because the August 30, 1990 total less these uncashed checks equals $865,727.40, plaintiff was entitled to half the $875,000 minimum provided for in the judgment. From that amount, defendant withheld $45,000 for legal, accounting and appraisal fees which he had previously paid plaintiff pursuant to a May 16, 1989 pendente lite order issued by Supreme Court. The order provided "that the sum paid by defendant pursuant to this order shall be a credit to defendant at the time of equitable distribution".

Supreme Court denied plaintiff's motion for an order directing (1) defendant to pay her $80,290.61, the difference between one half of the value of the accounts on August 30, 1990 and the amount defendant actually paid her, (2) an accounting of all interest earned on the two accounts from August 30, 1990 to date and the disposition of that interest, and (3) a sum equal to the interest earned on one half of the accounts through the date of payment to her. Plaintiff appeals. We agree with Supreme Court to the extent that it allowed defendant to withhold $45,000 for fees previously paid from the amount owed plaintiff, but differ as to the remaining issues.

Generally, "[a] judgment is the law's last word in a judicial controversy, it being the final determination by a court of the rights of the parties upon matters submitted to it in an action or proceeding" *(Towley v King Arthur Rings,* 40 NY2d 129, 132; *see,* CPLR 5011). However, Domestic Relations Law § 237 (a) specifically empowers the court to award interim litigation expenses "in the final judgment * * * *or by one or more orders from time to time before final judgment,* or by both" (emphasis supplied) *(see,* Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C237:3, at 507; Scheinkman, 1987 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C237:4 [1992 Pocket Part], at 174-175). In adhering to the prior determination that defendant was to receive a credit upon such distribution, Supreme Court's decision is consistent with the word and spirit of this law.

With respect to plaintiff's share of defendant's brokerage accounts, the transcript of the open-court settlement stipulation makes clear that $875,000 was the number chosen because it was the amount of municipal bonds and cash that defendant represented was in his name in First Albany on August 30, 1990. This and the specific language of the final judgment previously highlighted suggest that it was the par-

ties' intent that plaintiff receive half the amount that was in defendant's brokerage accounts on August 30, 1990 and that those accounts at that moment, as represented by defendant, totaled at least $875,000. Later communications between the parties' counsels are consistent with this.

Defendant maintains that the value of his brokerage accounts on August 30, 1990 is not the amount actually in the account on that day as evidenced by the account statements, but rather that amount less the $60,502.45 in checks drawn on his account with First Albany which were outstanding on that day. Although there is no evidence that these checks were written other than in the normal course of business, until the time they were cashed they could be canceled by defendant. As a consequence, defendant still had access to the amount that was actually in the accounts on August 30, 1990; hence, plaintiff's share of these accounts was $463,114.92. Applying the $45,000 credit to which defendant is entitled reduces plaintiff's share to $418,114.92. Inasmuch as plaintiff has only received $392,500, defendant is obligated to pay over to her an additional $35,290.61.

With respect to plaintiff's claim for interest, the stipulation sets no time for distribution of her share of the brokerage accounts and makes no provision for the payment of interest. However, the judgment entered thereon provides that distribution be made to plaintiff within 15 days of the date thereof, October 12, 1990. Inasmuch as defendant had no obligation to transfer the funds to plaintiff prior to October 27, 1990, there is no basis for an award of interest prior to that time. However, plaintiff is entitled to interest at the rate of 9% per annum on her $418,114.92 share from October 27, 1990 until December 5, 1990 (see, CPLR 5003) and on $25,614.92 from and after December 5, 1990 to the date when such payment is made (see, CPLR 5004; Siegel, NY Prac § 412, at 627 [2d ed]; cf., Citibank v Liebowitz, 110 AD2d 615).

Mikoll and Harvey, JJ., concur.

Mercure, J. (dissenting). Because it is our view that the majority's resolution of the issues presented on the appeal is contrary to the express agreement of the parties, as stated in their stipulation of settlement, we are constrained to dissent.

Initially, we find no basis for the majority's determination to increase the balance of the First Albany Corporation account by the amount of checks which had been issued prior to the parties' August 30, 1990 stipulation but which had not yet "cleared". The fact that defendant could have stopped pay-

ment on the checks is irrelevant to the primary issue for our consideration, the intent of the parties as expressed in the agreement *(see, Teitelbaum Holdings v Gold,* 48 NY2d 51, 56; *Northrup Contr. v Village of Bergen,* 129 AD2d 1002, 1003). The agreement, of course, makes no distinction between paid and unpaid checks; it makes no mention of checks at all. Rather, after stating his understanding that the cash and bonds in the account totaled $875,000, plaintiff's attorney recited that "[plaintiff] is to receive cash and bonds equal to 50 percent of the value of the said amount of the $875,000.00". Later, he stated that "[i]f there is disagreement as to methodology of division of the $875,000.00, then the attorneys will try to work it out". In our view, this language evidences plaintiff's clear intention to accept $437,500 as her distributive share of the account, the sum which defendant is willing to pay. The majority's contrary determination is based in large measure upon the language of the judgment of divorce and not the parties' own stipulation. Clearly, in determining the intent of the parties, the latter controls.

The question of defendant's entitlement to reimbursement for his payment of $45,000 in counsel fees is, admittedly, more problematic. It is our view, however, that defendant forfeited his right to the credit provided for in the pendente lite order by entering into the stipulation of settlement, by its very terms "in full and final settlement of all the issues in this case", agreeing to the precise manner of distribution of the parties' marital assets and permitting the entry of judgment thereon without specific reservation of his right to reimbursement *(see, Metz v Metz,* 175 AD2d 938, 939). This view is supported by the transitory nature of a pendente lite award, generally of no effect once a final judgment has been entered *(see, Flynn v Flynn,* 128 AD2d 583, 584; Scheinkman, 1988 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C237:3 [1992 Pocket Part], at 173), and the fact that a settlement agreement by its very nature " 'terminates all of the claims of the parties heretofore made in the action' " *(Skogsberg Constr. Co. v Hawthorne Indus. Park,* 94 AD2d 766, 767). Here, the stipulation of settlement and final judgment of divorce make absolutely no mention of the contested issue of counsel fees, leading, we believe, to the unmistakable conclusion that the parties intended to release claims in that regard. This is particularly so in view of the stipulation's specific mutual waiver of "all her [or his] rights to any other assets" and the provision of the judgment that "each party waives the rights to all other

properties of the other party, both real and personal". In view of the fact that the stipulation recognized the outstanding award of temporary maintenance and made specific provision for its continuation to the time of judgment, it cannot be seriously argued that the parties simply overlooked the $45,000 counsel fee award.

For the foregoing reasons, we would grant plaintiff's application to the extent of awarding judgment against defendant in the amount of $45,000, together with interest on any unpaid portion of the distributive award from October 27, 1990.

Mahoney, J., concurs. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as denied plaintiff's motion for a judgment for $80,290.61 and interest; motion granted to the extent that plaintiff is entitled to judgment against defendant for $25,614.92, representing the difference between 50% of the amount actually in defendant's brokerage accounts on August 30, 1990, less credit for litigation expenses and the amount actually paid to plaintiff, with interest in accordance with this decision; and, as so modified, affirmed.