OPINION OF THE COURT
Levine, J.
Edward J. Harvey, Sr., a shareholder of a retail liquor store, purchased medical reimbursement health coverage from defendant Members Employees Trust for Retail Outlets (METRO), a self-insured health benefit plan. METRO was established by the Metropolitan Package Store Association, a trade association of liquor stores, to provide health benefits to the employees of participating association members. Harvey’s store was a member of the association and participated in the METRO plan.
Harvey’s medical records indicate that he suffered from various illnesses caused by alcohol abuse, including cirrhosis of the liver. He was hospitalized twice in 1994 and ultimately died in the hospital from hypovolemic shock and liver failure. The METRO plan denied coverage for Harvey’s hospitalization and medical care on the ground that it did not provide benefits for illnesses arising from the use of alcohol. Thereafter, plaintiff, as the executor of Harvey’s estate, brought this action for a judgment declaring that METRO was obligated to reimburse the estate for Harvey’s hospital and medical bills. Plaintiff moved, and METRO cross-moved, for summary judgment.
Supreme Court denied plaintiff’s motion, granted METRO’S cross motion and dismissed the complaint. The Appellate Division reversed, granted summary judgment to plaintiff and remitted the matter to Supreme Court for entry of a judgment declaring that METRO was obligated to reimburse Harvey’s estate for the medical and hospital bills (272 AD2d 575). The court held that Insurance Law § 3221 and its implementing regulations did not permit an insurer to exclude coverage for medical conditions causally related to alcohol use. The court also determined that Insurance Law § 3221 and its implement *103 ing regulations were not preempted by the Federal Employee Retirement Income Security Act (ERISA) (Public Law 93-406, adding 29 USC § 1001 et seq.). We granted leave to appeal and now affirm.[1]
I
The first issue before us on this appeal is whether the Insurance Law and its implementing regulations permit a self-insured health benefit plan like METRO to exclude coverage for medical conditions that develop as a consequence of alcohol use. Conceding that the Insurance Law and regulations apply to health benefit self-insurers, METRO argues that the exclusion of alcohol-related illnesses is authorized by Insurance Law § 3221 (Z) (6) (A) and 11 NYCRR 52.16 (c).
Before its amendment in 1999, Insurance Law § 3221 (Z) (6) (A) expressly provided that “[e]very insurer delivering a group * * * policy or issuing a group * * * policy for delivery, in this state, which provides coverage for inpatient hospital care must make available and, if requested by the policyholder, provide coverage for the diagnosis and treatment of alcoholism or alcohol abuse,” including coverage for minimum periods of detoxification treatment and rehabilitation services (emphasis supplied).[2] The applicable regulation provides that “[n]o policy shall limit or exclude coverage by type of illness, accident, treatment or medical condition, except * * * mental or emotional disorders, alcoholism and drug addiction, except that coverage must be made available or provided pursuant to section * * * 3221 * * * of the Insurance Law” (11 NYCRR 52.16 [c] [2] [emphasis supplied]).
METRO reads Insurance Law § 3221 as mandating coverage for alcohol rehabilitation and detoxification treatment. It then interprets the regulation as allowing the exclusion of coverage for illnesses arising from the use of alcohol. To reach its conclusion, METRO reads the exception for “alcoholism” contained in the regulation as referring not to alcoholism itself, but to ill *104 nesses arising from the use of alcohol. METRO maintains that it would make no sense to read the exception for “alcoholism” as referring to alcoholism alone because the exception then would be canceled out by the further requirement that coverage for treatment of alcoholism be made available pursuant to Insurance Law § 3221. We disagree.
METRO’S argument is based on a misreading of the statute and regulation. Contrary to METRO’S position, Insurance Law § 3221 (l) (6) (A) does not mandate coverage for alcoholism. Rather, it simply requires insurers to make available to proposed insureds the option to purchase certain additional coverage for the diagnosis and treatment of alcoholism. In this way, the statute promotes the legislative goal “to promote and expand * * * health insurance coverage” for “the diagnosis and treatment of alcoholism through reimbursement for detoxification and rehabilitation services” (L 1981, ch 28, § 1; see also, former Insurance Law § 162 [17]; Mem of Assembly-member Passannante, 1981 NY Legis Ann, at 47; Bill Jacket, L 1983, ch 595).
With an understanding of the correct application of the statute, METRO’S argument — that the regulation makes sense only if it is read to allow the exclusion of coverage for alcohol-related illnesses — does not withstand scrutiny. The “alcoholism” exception in the regulation permits insurers to exclude coverage for the diagnosis and treatment of alcoholism itself, thereby recognizing that coverage for the diagnosis and treatment of alcoholism is not mandated. The regulation’s further exception for Insurance Law § 3221 merely requires group insurers to make available as an option certain added coverage for the diagnosis and treatment of alcoholism. This leaves intact and meaningful the literal application of the regulatory bar against excluding coverage “by type of illness” (11 NYCRR 52.16 [c] [2], supra) to illnesses arising from the use of alcohol. The two exceptions in the regulation do not cancel each other out but complement each other and, thus, do not compel us to accept the tortured interpretation of the regulation that METRO urges.
Indeed, the drafters of the regulation could have used the phrase illnesses “arising out of’ alcoholism or similar terminology if they intended the exclusion for alcoholism to apply to such illnesses. The insurance regulations use such “arising out of’ language in various sections (see, e.g., 11 NYCRR 16.12 [e] [Code 2-14060] [“Coverage for liability arising out of use of hazardous pesticides”]; [e] [Code 2-50000] [“Coverage for losses *105 arising out of the actions of a foreign government”]; 52.25 [b] [2] [iv] [“Illness, treatment or medical condition arising out of’ various risk exposures, such as “war” and “service in the armed forces”]; 60-1.2 [d] [“Bodily injury to or sickness, disease or death of any employee of the insured arising out of’ the insured’s employment]).
In fact, section 52.16 itself provides an exception for the exclusion of coverage with respect to “illness, accident, treatment or medical condition arising out of ’ certain other enumerated situations (11 NYCRR 52.16 [c] [4] [emphasis supplied]). The drafters of the regulation, however, chose not to use such language in crafting the alcoholism exception to the prohibition of exclusions based upon type of illness contained in section 52.16 (c) (2). Under these circumstances, no reason exists to interpret the alcoholism exception as referring to “illnesses arising from alcoholism.”
In this case, Harvey suffered from illnesses arising from his use of alcohol. As previously discussed, the applicable regulation explicitly prohibits METRO from excluding coverage by type of illness, and the exception for coverage for alcoholism is inapplicable here. Thus, we agree with the Appellate Division that Insurance Law § 3221 (l) (6) (A) and 11 NYCRR 52.16 (c) did not permit METRO to exclude coverage for Harvey’s alcohol-related illnesses.
II
We also agree with the Appellate Division’s conclusion that ERISA (29 USC § 1001 et seq.) does not pre-empt the application of Insurance Law § 3221 (l) (6) (A) and 11 NYCRR 52.16 (c) in this case. Congress enacted ERISA in 1974 “to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits” (James v Fleet/Norstar Fin. Group, 992 F2d 463, 465 [2d Cir]). ERISA “does not go about protecting plan participants and their beneficiaries by requiring employers to provide any given set of minimum benefits” (New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co., 514 US 645, 651). Rather, it “controls the administration of benefit plans” by imposing, among other things, “reporting and disclosure mandates * * * and fiduciary responsibilities for plan administrators” (id.).
ERISA provides an extensive and complex pre-emption scheme to facilitate the maintenance of a uniform national law governing employee benefit plan administration. The pre *106 emption provisions allow plan fiduciaries to administer employee benefit plans uniformly across State lines based upon the governing documents and instruments, while still allowing certain incidental State regulation of plans.
As relevant here, ERISA contains a broad general preemption provision (see, 29 USC § 1144 [a]). That, however, is followed by an Insurance Savings Clause (see, id. § 1144 [b] [2] [A]) which limits pre-emption with respect to State regulation of insurance. The application of the Insurance Savings Clause to preserve State insurance regulation is in turn expressly subject to an exception contained in the so-called “Deemer Clause,” by which employee benefit plans are not to be deemed insurers even if subject to State regulation as such (see, id. § 1144 [b] [2] [B]). The Deemer Clause, however, is statutorily trumped, in pertinent part here, by a 1983 amendment to ERISA permitting State insurance regulations to be extended to any non-fully insured employee benefit plan which is a “multiple employer welfare arrangement [MEWA] * * * to the extent [that the regulation is] not inconsistent with the preceding sections of [the ERISA statute]” (id. § 1144 [b] [6] [A] [emphasis supplied]).
METRO persuasively argues that ERISA’s general preemption provision — which directs that ERISA “shall supersede any and all State laws insofar as they may * * * relate to any employee benefit plan” (29 USC § 1144 [a]) — applies to preempt Insurance Law § 3221 and its implementing regulations because those provisions “relate to” the METRO benefits plan in requiring the plan to provide coverage for alcohol-related illnesses. The Supreme Court of the United States has held that a State law relates to an ERISA plan “if it has a connection with or reference to such a plan” (Shaw v Delta Air Lines, 463 US 85, 97 [emphasis supplied]). The forbidden connection has been found in State mandates that impose a particular benefit structure on ERISA-covered employee benefit plans (see, Travelers, supra, 514 US, at 656-658; Shaw v Delta Air Lines, supra, 463 US, at 97; see also, Metropolitan Life Ins. Co. v Massachusetts, 471 US 724, 739 [“the mandated-benefit law as applied relates to ERISA plans and thus is covered by ERISA’s broad pre-emption provision”]). Here, Insurance Law § 3221 (l) (6) (A) and 11 NYCRR 52.16 (c) apparently have a “connection with” the METRO employee benefit plan because they similarly impose a basic benefit structure by dictating that the plan provide coverage for alcohol-related illnesses.
The determination that ERISA’s general pre-emption provision is triggered in this case does not, however, end the pre *107 emption analysis. As previously outlined, even when a State insurance regulation of general application falls within ERISA’s general pre-emption provision, its supersedure may be avoided under ERISA’s Insurance Savings Clause, which declares that, “[e]xcept as provided [in the next subparagraph],” nothing in ERISA “shall be construed to exempt or relieve any person from any law of any State which regulates insurance” (29 USC § 1144 [b] [2] [A]).
Metropolitan Life Ins. Co. v Massachusetts (471 US 724, supra) is the seminal case on the scope of the Insurance Savings Clause in exempting State insurance regulation from ERISA’s broad general pre-emption provision. There, the insurer challenged on express pre-emption grounds the validity of a statute mandating that all group health insurance policies sold within the Commonwealth of Massachusetts, including those sold to ERISA employee benefit plans, provide certain minimum coverage for treatment of mental illness. In rejecting the insurer’s contention that the Savings Clause should be construed to preserve only “traditional” State law directly regulating insurers on “such matters as the way in which insurance may be sold,” the Supreme Court of the United States interpreted the Insurance Savings Clause expansively (id., at 741). The Court held that the Savings Clause extended to State regulation of the substantive content of health insurance policies in employee benefit plans, including provisions mandating the scope and type of health insurance benefits, akin to the regulation at issue here (see, id., at 744). The Court recognized that saving substantive content-based State regulation of insurance contracts would perpetuate “the disuniformities currently facing national [employee benefit] plans that enter into local markets to purchase insurance” (id., at 747), in derogation of one of the purposes of ERISA. But, the Court concluded, “[s]uch disuniformities * * * are the inevitable result of the congressional decision to ‘save’ local insurance regulation. Arguments as to the wisdom of these policy choices must be directed at Congress” (id.).
Nonetheless, because METRO is a free-standing employee welfare plan whose benefits are self-funded rather than funded through insurance policies, application of the statute and regulation to METRO loses the protection of the Insurance Savings Clause by virtue of the Deemer Clause exception, which provides that no employee benefit plan “shall be deemed to be an insurance company or other insurer * * * or to be engaged in the business of insurance * * * for purposes of any *108 law of any State purporting to regulate insurance companies [or] insurance contracts” (29 USC § 1144 [b] [2] [B]). As explained in FMC Corp. v Holliday,
“By forbidding States to deem employee benefit plans ‘to be an insurance company or other insurer ... or to be engaged in the business of insurance,’ the deemer clause relieves plans from state laws ‘purporting to regulate insurance.’ As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation ‘relate [s] to’ the plans. State laws directed toward the plans are pre-empted because they relate to an employee benefit plan but are not ‘saved’ because they do not regulate insurance. State laws that directly regulate insurance are ‘saved’ but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws” (498 US 52, 61).
Plaintiff urges, however, that the Deemer Clause is inapplicable to the METRO plan because, as METRO concedes, the plan is a MEWA (see, 29 USC § 1002 [40] [A]). As quoted and explained in the earlier outline of the over-all pre-emption scheme of ERISA, despite the Deemer Clause, State regulation of insurance may be applied to self-funded MEWA employee welfare benefit plans such as METRO, “to the extent not inconsistent with the preceding sections of [ERISA]” (29 USC § 1144 [b] [6] [A] [ii], supra [emphasis supplied]).
Congress added the MEWA provision to curb abuses by certain multiple employer trusts, which often invoked ERISA pre-emption to avoid State regulation and proceeded to squander or embezzle trust funds, ultimately declaring bankruptcy and “leaving thousands of people holding the bag for millions of dollars in unpaid hospital and medical bills” (128 Cong Rec 30356 [statement of Rep Erlenborn]). The purpose of the amendment was to make clear the extent to which State insurance regulation is saved from pre-emption, when applied to employee benefit plans that are also MEWAs (see, id., at 30357). In light of the MEWA provision, “states are now free to regulate MEWAs whether or not the MEWA may also be an ERISA-covered employee welfare benefit plan” (Multiple Employer Welfare Arrangements Under the Employee Retire *109 ment Income Security Act: A Guide to Federal and State Regulation [ERISA Guide], US Dept of Labor Doc, at 5 <http:// www.dol.gov/dol/pwba/public/pubs/mwguide.pdf>).
METRO asserts that Insurance Law § 3221 (l) (6) (A) and 11 NYCRR 52.16 (c) are inconsistent with ERISA, thereby rendering the MEWA exception to the Deemer Clause inoperative. Therefore, METRO urges, the Deemer Clause controls to restore application of ERISA’s general pre-emption provision to invalidate the State regulation at issue here. Because no direct conflict exists between the State mandate for health benefit coverage here and any specific provision in ERISA, METRO cannot point to any “section” of ERISA with which the statute and regulation here are “inconsistent” (see, id.). As noted in Metropolitan Life Ins. Co. (supra, 471 US, at 732), ERISA does not regulate the substantive content of welfare-benefit plans.
Instead, METRO contends that the conflict, hence inconsistency, is between the State regulation of the content of health benefits in this MEWA employee benefit plan and ERISA’s core concern for nationwide uniformity in the administration of all such plans. METRO does not make clear whether this argument is based purely upon statutory interpretation in addressing the critical issue here from the standpoint of express preemption analysis, or relies instead upon the implied conflict pre-emption doctrine on the theory that substantive content-based State regulation of employee health benefit coverage in the METRO plan stands as an obstacle to the accomplishment and execution of the congressional objectives in enacting ERISA (see, Geier v American Honda Motor Co., 529 US 861, 881-882). Under either theory, METRO’S argument is unavailing.
Congress itself made the policy determination that the objective of national uniformity in the administration of employee benefit plans must yield to its concomitant “decision to ‘save’ local [substantive content-based as well as procedural] insurance regulation,” knowing full well that it would perpetuate “disuniformities” (Metropolitan Life Ins. Co., supra, 471 US, at 747). In the same vein, as indicated in the previously cited legislative history of the MEWA amendment, Congress made a second policy decision in 1983 to permit further disuniformity by, in effect, extending the Insurance Savings Clause to this type of content-based health benefit regulation of self-insured MEWA employee health benefit plans. Therefore, enforcement of the mandated coverage for alcohol-related illness under Insurance Law § 3221 and 11 NYCRR 52.16 (c) is neither inconsistent nor in conflict with ERISA or congressional objectives *110 in enacting it and, thus, does not violate the Supremacy Clause (US Const, art VI, cl [2]), either under express pre-emption or implied conflict pre-emption analysis.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Graffeo concur.
Order affirmed, with costs.

. The Appellate Division order is final and subject to review by this Court because the remittal to Supreme Court contemplates purely ministerial action (see generally, Karger, Powers of the New York Court of Appeals § 17, at 79-81 [3d ed]).

. The 1999 amendment did not affect the applicability of the statute to alcoholism. The amendment merely mandates availability of extended optional coverage to treatment of all forms of “chemical abuse” and “chemical dependence” (L 1999, ch 558, § 27). “Chemical abuse” includes alcohol and substance abuse (id.). “Chemical dependence” includes alcoholism and substance dependence (id.).