[919 NYS2d 1]

SIEGMUND STRAUSS, INC., Respondent, v EAST 149TH REALTY CORP., Defendant, and WINDSOR BRANDS, LTD., et al., Appellants.

First Department, December 21, 2010

### APPEARANCES OF COUNSEL

*Mischel & Horn, P.C.*, New York City (*Scott T. Horn* and *Naomi M. Taub* of counsel), for appellants.

*Epstein Becker & Green, P.C.*, New York City (*Ralph Berman* and *Adrian Zuckerman* of counsel), for respondent.

### OPINION OF THE COURT

McGUIRE, J.

Plaintiff Siegmund Strauss, Inc., a wholesale food and beverage distributor, entered into negotiations with defendants Windsor Brands, Ltd. and Twinkle Import Co. to merge their businesses and operate in premises leased by Windsor at 520 Exterior Street (also known as 110 East 149th Street), Bronx, New York (the premises). Windsor had a lease agreement with defendant East 149th Realty Corp. (the landlord) that commenced on September 1, 1992 and expired on August 31, 2007. Defendant Twinkle was a wholesale distributor of food products and paper goods which, prior to May 1, 2006, paid Windsor rent as a subtenant and operated its business at the premises. The individual defendants, husband and wife, are the respective sole owners and shareholders of the corporate defendants, Twinkle and Windsor (collectively, the Rodriguez defendants). Specifically, Mr. Rodriguez is the sole owner, shareholder and officer of Twinkle and the sole officer of Windsor. His wife is the sole owner and shareholder of Windsor.

A letter agreement was drafted but never signed by the parties. The agreement provided, inter alia, that Strauss would purchase all of Windsor's equipment and fixtures for a total of $100,000; Windsor would terminate its business, be dissolved

and use its best efforts to negotiate a new lease between the landlord and Strauss; upon execution of the new lease, Strauss would reimburse Windsor for its $100,000 security deposit; and the Rodriguezes would purchase a one-third ownership of Strauss based on its net book value. A dispute arose between the parties over whether the Rodriguezes would have an interest in payments or grants that Strauss received from the City of New York.

A letter agreement between Strauss and Twinkle was also drafted providing that Strauss would purchase Twinkle's inventory of goods at Twinkle's "cost as reflected on its books and records"; Twinkle would furnish Strauss with an itemized bill of sale for its inventory; Twinkle would terminate its business; and Twinkle would act as Strauss's sales representative, earning a $3/4\%$ commission on Strauss's net sales.

Before the letter agreements were presented for execution on May 1, 2006, the parties began performing thereunder. In particular, on April 29 and 30, the Rodriguezes used their trucks and employees to help Strauss move its business into the premises, Twinkle ceased its operations and all of the Windsor and Twinkle employees, including the Rodriguezes, became employees of Strauss. Shortly thereafter, the relationship between the parties became strained. It was suggested that the Rodriguezes come up with a monetary amount they would be willing to accept to leave the newly merged business. The parties tried to negotiate an agreement, but the negotiations reached a stalemate by the end of May 2006. On June 1, 2006, Strauss changed the locks on the premises so that the Rodriguezes could not enter, and on June 5, Strauss terminated the Rodriguezes' employment and removed them from Strauss's payroll.

Strauss commenced the instant action by summons and complaint dated June 6, 2006, seeking, inter alia, a declaratory judgment that it is the rightful tenant of the premises and that neither Windsor nor Twinkle has an interest in the premises. Strauss also sought relief against the landlord, seeking a lease for the premises. After Strauss entered into a lease for the premises, the claims against the landlord were discontinued. The Rodriguez defendants filed an answer in which they asserted counterclaims sounding in fraud, conversion and tortious interference with contractual relations.

Strauss moved for a preliminary injunction and temporary restraining order prohibiting the Rodriguezes from entering the premises. The Rodriguezes cross-moved for an order declaring

that they had the sole right to the premises, to the exclusion of Strauss. The court denied both parties' requests for a TRO, and the parties entered into a so-ordered stipulation providing that Strauss would pay the Rodriguez defendants $40,000 and that Strauss would be entitled to exclusive possession of the premises pending a hearing on the preliminary injunction. After a hearing, the court granted Strauss's motion and denied the Rodriguez defendants' cross motion, finding that Strauss was likely to prevail on the merits of its claim for possession based on the unexecuted letter agreements (*Siegmund Strauss, Inc. v East 149th Realty Corp.*, 13 Misc 3d 1209[A], 2006 NY Slip Op 51753[U], *8). Specifically, the court concluded that Strauss would likely prevail on its claim that the unexecuted agreements are enforceable "based on the doctrine of partial performance," because neither party disputes that the "letter agreements contemplated that Strauss would move its business onto the property and take over Windsor's lease" (*id.*). The court noted that Strauss had not only moved its business onto the premises and made rent payments but also had made improvements to the property, having repaired the bathrooms and constructed a cashier's booth in the warehouse. The court found that this conduct was "inexplicable except for the alleged oral agreement" (*id.*).

In addition, the court noted that Strauss took these actions with the acquiescence and cooperation of the Rodriguez defendants who "helped Strauss set up its business on and move its inventory onto their property; [loaned] Strauss their employees' labor and trucks" (*id.*), went to work for Strauss and had their employees work for Strauss. The court concluded that "[b]y these actions, the Rodriguezes acknowledged the existence of the oral agreement alleged by Strauss" (*id.*).

In the meanwhile, during the pendency of this action, the landlord terminated the lease with Windsor on the ground that it had an illegal sublet. The facts regarding the illegal sublet are not clear from the record but the record does make clear that the court concluded that the landlord lawfully terminated the lease on this basis and entered into the new lease with Strauss.

Thereafter, the Rodriguez defendants served an amended answer, counterclaim, cross claim and third-party complaint. The amended counterclaims asserted causes of action against Strauss sounding in fraud, conversion and tortious interference with contracts with the landlord, suppliers, customers and vendors. The third-party complaint asserted causes of action

against Strauss's principals sounding in fraud, conversion, tortious interference with contract, improper accounting and wrongful termination. Critically, the Rodriguez defendants did not assert a claim for breach of contract and in their answer denied that an agreement existed between the parties.

Strauss and its principals moved to dismiss the counterclaims and the third-party complaint, arguing that the Rodriguez defendants failed to state a cause of action. By order entered August 6, 2007, the court granted the motion, finding that the fraud claims were predicated on a breach of contract because the fraud alleged is that Strauss entered into the agreement without an intention of performing it. The court noted that the Rodriguez defendants "do not allege that the Strauss parties owed them any duties outside of those in the proposed agreement." (2007 NY Slip Op 32436[U], *14.) The court similarly found that because the counterclaim for conversion was based on a claim for breach of contract, the allegations did not support the claim for conversion. With regard to the portion of the tortious interference claim that was premised on Strauss's alleged interference with Windsor's lease, the court found that it was not sufficiently pleaded and dismissed it. The court also dismissed that portion of the tortious interference claim that was based on the Rodriguez defendants' contractual relationships with suppliers, customers and vendors, finding that it, too, was not sufficiently pleaded.

After further motion practice, Strauss filed its note of issue on or about February 1, 2008. Thereafter, the Rodriguez defendants moved for leave to amend their answer, counterclaims and third-party complaint to assert, among other things, claims for breach of contract against Strauss and its principals. Strauss opposed the motion, arguing that the Rodriguez defendants failed to provide an excuse for their substantial delay in seeking to amend their pleadings and that it had been prejudiced because it did not have the opportunity to conduct discovery regarding the breach of contract claims. In addition, Strauss argued that the claims were legally deficient.

By order entered February 25, 2008, the court denied the motion without explanation. At the hearing on the motion, however, the court noted that the note of issue had been filed, determined that the motion was untimely and deemed it "almost frivolous at this time." The court also noted that the Rodriguez defendants "had 20 months to amend the [pleadings]" but waited until after the note of issue was filed "to

totally change the theory of the case" after the court had previously written two decisions addressing the pleadings.

The Rodriguez defendants filed a notice of appeal but subsequently decided not to perfect the appeal, opting instead to appeal from the final judgment. After a bench trial, the court issued an order declaring, among other things, that Strauss is entitled to possession of the premises pursuant to its lease with the landlord and that the Rodriguez defendants have no interest in the lease or the property. The Rodriguez defendants appeal from the judgment and assert that it brings up for review the prior orders, entered August 6, 2007 and February 25, 2008, dismissing their claims and denying their motion to amend their pleadings, respectively. After oral argument of the appeal, we requested supplemental briefs from the parties on the question of whether the appeal from the judgment brings up for review the prior orders.

■ Unfortunately for the Rodriguez defendants, who appear not to have received appropriate compensation for their business as a result of the failed merger, we conclude that the appeal from the judgment does not bring up for review the prior orders. Pursuant to CPLR 5501 (a) (1), an appeal from a final judgment brings up for review "any non-final judgment or order which necessarily affects the final judgment." As Professor David Siegel has explained, determining whether an order is brought up for review by an appeal from the final judgment "introduces the sometimes difficult inquiry of when it is that an intermediate order or interlocutory judgment 'necessarily affects' the final judgment" (Siegel, NY Prac § 530, at 910 [4th ed]). He concedes that his test for making such a determination is "not perfect but helpful" (id.). That is, he suggests asking the following question: "assuming that the nonfinal order or judgment is erroneous, would its reversal overturn the judgment? If it would, it is a reviewable item; if it would not, and the judgment can stand despite it, it is not reviewable" (id.). Here, if the orders granting dismissal of the counterclaims and denying the motion to amend the answer were reversed, the Rodriguez defendants' claims would be reinstated and they would be permitted to pursue a claim for breach of contract. However, the judgment which declared that Strauss was entitled to possession of the leased premises would still stand.

In *Barrett Japaning, Inc. v Bialobroda* (68 AD3d 474 [1st Dept 2009]), we applied the test suggested by Professor Siegel,

albeit without expressly stating that we were utilizing that test. We held that the appeal by the defendant, a resident of the building owned by the plaintiff cooperative corporation, from the 2008 judgment in favor of the plaintiff did not bring up for review a 2006 order, since the defendant sought to challenge only so much of that order as dismissed her seventh and eighth counterclaims for breach of warranty of habitability and discrimination, while the judgment dealt solely with whether the roommate law permitted the defendant to have more than one roommate living in her unit (*id.* at 475). Specifically, the judgment enjoined the defendant from having persons unrelated to her, except for one roommate, occupy the fifth floor of the subject premises, and directed the eviction of all but one of the coresidents. Our decision noted that "[a]n appeal from a judgment encompasses any nonfinal determination that necessarily affects the judgment," and explained that because the judgment dealt solely with the defendant's roommate claims and was not affected by the 2006 prior order dismissing her counterclaims for breach of warranty of habitability and discrimination, the prior order was not reviewable on the appeal from the judgment (*id.*).

■ The next question is whether the Rodriguez defendants can avoid this result because they also have moved for an enlargement of time to perfect their appeal from the February 2008 order and to consolidate that appeal with the instant appeal. Since they filed their notice of appeal on March 26, 2008, their time to perfect the appeal effectively expired in December 2008 (22 NYCRR 600.11 [a] [3]). The Rodriguez defendants did not have any contact with this Court regarding this appeal until April 2010, after we requested supplemental briefing. While this Court generally has some discretion with regard to these types of motions, we cannot exercise that discretion in favor of the Rodriguez defendants.

The critical fact is that the Rodriguez defendants' right to appeal the prior order terminated when the final judgment was entered (*see Matter of Aho*, 39 NY2d 241, 248 [1976] [any right of direct appeal from intermediate order terminates with entry of final judgment]). Because of the rule of *Matter of Aho*, a significant problem may arise if an interlocutory appeal is taken and a final judgment is entered during the pendency of that appeal (*see* Siegel, 1997 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 5501, 2010 Pocket Part, at

3-5; Davies et al., New York Civil Appellate Practice § 4:4 at 97-98 [8 West's NY Prac Series 2008]). The Legislature provided a sensible but partial measure of relief in 1997 when it amended CPLR 5501 (c) (L 1997, ch 474) by adding what is now the second sentence. Pursuant to the amendment, an appeal from an order directing summary judgment or directing judgment on a motion addressed to the pleadings is deemed to be an appeal from an ensuing judgment entered on the order.

The rule of *Matter of Aho*, however, presents a fatal problem for litigants who take an interlocutory appeal from an order that does not necessarily affect the final judgment only to have final judgment entered before the interlocutory appeal is decided. However erroneous the order may be, they irrevocably lose their right to appellate review once final judgment is entered, regardless of whether they would obtain substantial relief if the order were reversed and even if they diligently pursued their interlocutory appeal. Moreover, given that final judgment might have been entered when the appellate court was on the verge of issuing a decision resolving the interlocutory appeal, judicial economy considerations can be undercut by the rule of *Matter of Aho*. For these reasons, the Legislature might wish to consider another amendment to CPLR 5501 (c) giving appellate courts discretion to review the order notwithstanding entry of final judgment. Without such an amendment, litigants in this position can protect their interlocutory appeal only by moving in the trial court for an order staying entry of the judgment.

The Rodriguez defendants' appeal from the judgment therefore does not bring up for review the August 6, 2007 order granting plaintiff's motion to dismiss the amended counterclaims and third-party complaint or the February 28, 2008 order denying their cross motion for leave to amend the answer. These prior orders do not "necessarily affect[ ]" the final judgment (CPLR 5501 [a]; *see Barrett Japaning*, 68 AD3d 474, *supra*; *Paru v Mutual of Am. Life Ins. Co.*, 52 AD3d 346, 348 [2008]), and any right of direct appeal terminated with entry of the final judgment (*Matter of Aho, supra*).

Accordingly, the judgment of the Supreme Court, New York County (Bernard J. Fried), entered April 7, 2009, declaring plaintiff to be the lawful tenant of the subject premises, should be affirmed, without costs.

Gonzalez, P.J., Saxe, Nardelli and Moskowitz, JJ., concur.

Judgment, Supreme Court, New York County, entered April 7, 2009, affirmed, without costs.

Motion seeking enlargement of time and consolidation denied as untimely; appeal dismissed.