Favourite Ltd. v Cico (2022 NY Slip Op 03987)

Favourite Ltd. v Cico

2022 NY Slip Op 03987

Decided on June 21, 2022

Appellate Division, First Department

RENWICK, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 21, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta
Dianne T. Renwick Peter H. Moulton Saliann Scarpulla John R. Higgitt

Index No. 652857/16 Appeal No. 15157 Case No. 2021-02511 

[*1]Favourite Limited, et al., Plaintiffs-Respondents,
v
Benedetto Cico, et al., Defendants-Appellants, 151 East Houston Acquisition LLC, Defendant.

Defendants appeal from the order of the Supreme Court, New York County (Jennifer G. Schecter, J.), entered June 8, 2021, which, insofar as appealed from as limited by the briefs, granted plaintiffs' motions for leave to file a third amended complaint and to dismiss defendants' counterclaims for breach of contract and a declaratory judgment.

Marvin Kemp. PLLC, Rhinebeck (Sean M. Kemp of counsel), for Carla Cico appellant; Toptani Law Offices, New York (Edward Toptani of counsel), for Benedetto Cico, appellants.
Fein & Jakab, New York (Peter Jakab of counsel), and Valla Associates, Inc., PC., New York (Antonio Valla of counsel), for respondents.

RENWICK, J. 

This appeal raises the interesting question of whether a trial court has the discretion to grant a plaintiff leave to amend a complaint, pursuant to CPLR 3025 (b)[FN1], after the Appellate Division has already ordered the complaint dismissed, with direction to enter judgment. We dismissed the complaint because plaintiffs, as non-managing members of a manager-managed Delaware limited liability company, lacked capacity [FN2] or standing to act on behalf of the Company when they obtained a Certificate of Revival of the Company before filing a second amended complaint. After plaintiffs purportedly remedied this deficiency of proper standing, they sought to revive the dismissed action by seeking leave to file a third amended complaint. As aforementioned, after we had already ordered the complaint dismissed, the motion court granted plaintiffs leave to file the third amended complaint. At the time plaintiffs sought leave to amend, the time to commence a new action had expired, including the six-month grace period provided by CPLR 205(a).[FN3] Under these circumstances, we find that the trial court lacked discretion to grant plaintiffs leave to amend a complaint that had already been dismissed by this Court.
 Factual and Procedural Background

A review of the long and entangled procedural history of this case is helpful to assess plaintiffs' predicament. In 2007, the parties formed Upper East Side Suites, LLC (the Company), a Delaware limited liability company to be managed by two siblings, defendants Benedetto and Carla Cico (the Cicos or defendants), for the purpose of acquiring 44-46 East End Avenue and renting the apartments as short-term accommodations (like Airbnb). The parties invested over $4.5 million in the Company. This case involves alleged improprieties by the Cico defendants. While the Cicos are alleged to have caused some of the losses due to their acts of self-dealing and deficient management, a critical event also adversely affected the viability of the Company. It became illegal in New York, after the Company purchased the building, to operate the Company's short-term rental business. This eventually resulted in the building defaulting on its mortgage. Faced with foreclosure, the Cicos sold the building and used the net proceeds of $1.1 million as a down payment on a more expensive building[*2], located at 151 Houston Street. Since the purchase price of the new building was nearly $19 million, substantial additional investment was required to close the sale. The investment, however, never materialized and the proceeds from the sale of the building were apparently forfeited.
Commencement of Action and Delaware's Cancellation of LLC
On November 13, 2015, non-managing members holding more than 50% of the membership interests in the Company, as permitted by the operating agreement, voted to remove the Cicos as managers. In May 2016, the Company, and various members, Favourite Ltd., Claudio Gatelli, Graziano Sghedoni, Alberto Brentegani, Sirio SRL, and Oile SRL (plaintiff members) commenced this action against the Cicos, and others, to recover their investments in the Company. Without stating whether the claims were direct or derivative, the action asserted claims for breach of the Company's operating agreement, breach of fiduciary duty, unjust enrichment, an accounting, fraud, and conversion. Meanwhile, on November 16, 2016, the Delaware Secretary of State cancelled the Company's certificate of formation for failure to replace the registered agent who had resigned.
On February 21, 2018, the Company defaulted, and the motion court granted defendants' motion without opposition and dismissed all the claims in the complaint. The court stated that the remaining plaintiffs "lack standing because the potentially viable claims in the complaint are derivative, and the complaint does not assert any derivative claims." The court explained that "[a]ll of the complaint's potentially viable causes of action belong to the Company because any recovery . . . would go to the Company and be distributed pro rata to its members," and that the complaint failed to sufficiently allege fraud. The court instructed the remaining plaintiffs to "decide whether they will seek leave to file an amended complaint in which they will replead their claims derivatively" and "that if an amended derivative complaint is filed, the proper causes of action should be for breach of the Operating Agreement and breach of fiduciary duty."
First Amended Complaint and Revival of the LLC
On March 29, 2018, plaintiff members filed its first amended complaint, asserting a first cause of action, individually and derivatively, for breach of the operating agreement, a second cause of action, derivatively, for breach of fiduciary duty, and a third cause of action, individually and derivatively, for fraud. The Company was dropped as a plaintiff in the first amended complaint after losing its legal representation.
On April 19, 2018, after the first amended complaint was filed, Sirio, as a member of the Company, obtained a Delaware Certificate of Revival of the Company. On May 31, 2018, plaintiff members asked the Company's other members to vote to approve a second amended complaint Resolution (the Resolution), which would authorize the Company to file a second amended complaint in the action. [*3]Fifty-one percent of the Company's members approved the Resolution by June 30, 2018.
Second Amended Complaint
On June 21, 2018, defendants moved to dismiss the first amended complaint, and on July 23, 2018, plaintiff members cross-moved for leave to file a second amended complaint to include the Company as a direct plaintiff, citing the certificate of revival and the members' consent to prosecute this action. The second amended complaint contains four causes of action: (1) derivative claim for breach of the operating agreement, asserted by the Company against the Cicos; (2) derivative claim for breach of fiduciary duty, asserted by the Company against the Cicos; (3) direct claim of fraud, asserted by plaintiff members against the Cicos; and (4) direct claim for inspection of the Company's books and records, asserted by plaintiff members against the Cicos.
In October 2018, the motion court largely granted the motion to amend. The court summarily rejected defendants' argument based on the certificate of revival, holding that the Company was no longer "inactive" and had standing to assert direct claims. The motion court also rejected defendants' jurisdictional argument, noting that, except for judicial dissolution claims, New York courts "routinely" adjudicate disputes involving the internal affairs of Delaware entities. The motion court, however, found the direct claim of fraud, asserted by plaintiff members against the Cicos, was not sufficiently pleaded with particularity. Thus, the motion court allowed plaintiff members to file a second amended complaint, but only as to the proposed derivative claims.
In November 2018, plaintiff members filed the second amended complaint, and defendants again moved to dismiss it. Defendants urged that dismissal was mandated because: (1) the Company's claims are being prosecuted without actual authority as the Company is acting at the direction of a majority of its members instead of its managers; (2) even if the Company can be duly directed to act at the direction of a majority of its members, the aggregate equity held by the directing members is less than 50%; (3) the claims are timed-barred; and (4) the second amended complaint fails to sufficiently plead a claim for breach of fiduciary duty.
On June 17, 2019, the motion court found that all but a portion of the third argument lacked merit; it partially granted the motion to dismiss the second amended complaint on the grounds that the Company's breach of contract and breach of fiduciary duty claims were time-barred. The motion court noted that the parties agreed that the applicable statute of limitations for both claims under Delaware law is three years (see 10 Del C § 8106; Wal-Mart Stores, Inc. v AIG Life Ins. Co., 860 A2d 312, 319 [Del 2004]). Moreover, the court noted, defendants conceded in the complaint that most of the claims accrued on May 29, 2013, less than three years before the action was commenced. Thus, the motion court found that the action [*4]was mostly not time-barred; it was only timed-barred with respect to allegations of wrongdoing prior to May 27, 2013. Otherwise, the court denied the motion to dismiss the second amended complaint, rejecting defendants' argument that the Company's claims were being prosecuted without actual authority.
Appellate Division's Dismissal of the Second Amended Complaint
Defendants did not appeal from the June 17, 2019, order. Instead, they appealed from the October 2018 order. Defendants argued that, in the absence of a choice-of-forum provision in the Company's LLC agreement, the agreement's Delaware choice-of-law provision, together with Section 18-1001 of the Delaware Limited Liability Company Act (LLC Act), gave Delaware Chancery Court exclusive jurisdiction to adjudicate plaintiffs' derivative claims. Alternatively, defendants argued, the Company lacked standing to sue in its own name, first, because Section 18-803(b) of the Delaware LLC Act requires judicial nullification of the LLC's certificate of cancellation by the Delaware Chancery Court; and second, even if Section 18-803(b) does not apply, the non-managing member who filed the certificate of revival had no authority to do so under the terms of the operating agreement.
By an order dated March 20, 2020, this Court rejected defendants' jurisdictional argument, reasoning that "[c]ontrary to defendants' contention, New York courts have subject matter jurisdiction over the amended complaint" and "[t]he fact that the operating agreement of [the LLC] chooses Delaware law is of no moment, since choice of law and choice of forum are altogether separate matters" (Favourite Ltd. v Cico, 181 AD3d 426 [1st Dept 2020] [internal quotation marks omitted]). This Court further noted that "section 18-1001 of the Delaware [LLC Act], which provides that a member or an assignee of a limited liability company's interest may bring an action in the Court of Chancery, is permissive, not mandatory" (id. [internal quotation marks omitted]).
Ultimately, however, this Court, with direction to enter judgment, ordered the second amended complaint dismissed on the ground that the Company had no capacity or standing to sue. Initially, this Court agreed with plaintiffs that judicial nullification of the LLC's cancellation under Section 18-803(b) of the Delaware LLC Act did not apply since the company was not dissolved (id. at 427). Therefore, this Court found, "the Company could, in theory, be revived under [the revival statute] section 18-1109(a)" (id.) However, this Court found that plaintiff Sirio SRL, which obtained the Certificate of Revival on April 19, 2018 as a member of the Company, lacked authority to act on behalf of the company, because:
"The Company's operating agreement states, 'No Member as a Member shall have the right to bind the Company in dealings with third parties. No Member is an agent of the Company solely by virtue of being a member and no Member has authority to act for the Company solely.' Even [*5]if the Company has become a member-managed LLC, which we are not deciding, the record contains no decision by more than 50% of the members to revive the Company before April 19, 2018. Plaintiffs rely on the vote to authorize the prosecution of the instant action, but that vote was taken between May 31 and June 30, 2018 . . . . Thus, the Company may not sue as a direct plaintiff, and the members thereof may not bring derivative claims on its behalf. Since plaintiffs lack standing or capacity, this action should be dismissed" (id.).
On June 5, 2020, plaintiff members moved for reargument of this Court's March 2020 dismissal order, and alternatively, for leave to appeal to the Court of Appeals. By order dated August 13, 2020, this Court denied reargument and leave to appeal (Favourite Limited v Cico, 2020 NY Slip Op 69878 [1st Dept 2020]).
Dismissal of Counterclaims and Revival of Action by Grant of Leave to Amend the Second Amended Complaint
Prior to this Court's March 20, 2020 dismissal order, defendants had filed amended answers with counterclaims in response to the second amended complaint, alleging that plaintiff members breached the Company's operating agreement, and seeking monetary damages and declaratory relief. Following this Court's dismissal of the second amended complaint, plaintiff members moved to dismiss the Cicos' counterclaims.
In addition, while the motion to dismiss the counterclaims was pending, on January 8, 2021, more than nine months after this Court had dismissed the second amended complaint, plaintiff members moved for leave to file a third amended complaint. Prior to moving for leave to file the third amended complaint, however, plaintiffs members sought to obtain or ratify proper standing and authority to bring this action. Specifically, on December 11, 2020, the Company nullified the 2018 certificate of revival, and filed with the Delaware Secretary of "State a "Certificate of Correction of the Certificate of Revival" and a State of Delaware Certificate of Revival of a Delaware Limited Liability Company" pursuant to section 18-1109 of the Delaware LLC Act, both signed by Claudio Gatelli, as an "authorized person." Plaintiff members argued that based on those filings, the Company had been properly revived.
In opposition, the Cicos argued that plaintiff members had not produced evidence that the Company duly authorized Gatelli to file either Corrective Certificate, contending that a June 30, 2018 resolution authorizing the Company to file the second amended complaint did not grant Gatelli authority to sign the certificates or authorize the filing of a third amended complaint. The Cicos further argued that even if the Company is now a member-managed company, Gatelli was not authorized to file the corrective certificates and the Company was not authorized to file the third amended complaint in the absence of an affirmative vote by a majority in interest, which it did not have.
By an order dated June 8, 2021, the motion [*6]court granted plaintiff members leave to file the third amended complaint, finding that the prior dismissal for lack of capacity to sue had been without prejudice, and that under the circumstances here, it would make no sense to require plaintiffs to commence a separate action to reassert the claims. It further found that the "record now contains a decision by more than 50% of the members to revive the Company made between May 31 and June 30, 2018," which was prior to the December 2020 filing of the certificate of revival, and thus there is no reason not to recognize the Company's revival. It also reiterated its prior finding that the proposed amendments to the complaint are not patently without merit.
By the same June 8, 2021 order, the motion court dismissed the breach of contract and declaratory judgment counterclaims, stating that "the bulk of [the counterclaims] are predicated on plaintiffs allegedly taking unauthorized action on behalf of the Company in violation of the operating agreement." The court reasoned that the Company was member-managed and plaintiff members had properly authorized the litigation on behalf of the Company and found them otherwise without merit.
Defendants now appeal from the June 8, 2021 order granting plaintiffs leave to file the third amended complaint and dismissing defendants' breach of contract and declaratory judgment counterclaims.
Discussion
Whether the Court Properly Granted Plaintiffs Leave to Amend the Second Amended Complaint
The initial question is whether Supreme Court had any discretion to grant plaintiffs leave to amend the complaint when this Court had already dismissed the second amended complaint. Usually, an application for leave to amend a pleading pursuant to CPLR 3025 (b), is governed by a permissive standard. Indeed, in the absence of prejudice or surprise resulting directly from the delay in seeking leave, applications to amend are to be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit (see CPLR 3025[b]; Cherebin v Empress Ambulance Serv., Inc., 43 AD3d 364, 365 [1st Dept 2007]). In this case, this Court dismissed the second amended complaint because of a pleading deficiency that plaintiffs lacked standing and capacity to sue. Standing and capacity related dismissals are not on the merits (see Landau v LaRossa, Mitchell & Ross, 11 NY3d 8, 13-14 [2008]), and the proposed third amended complaint purportedly cured the defect, except that here there was no existing complaint to amend. Our dismissal presented a unique procedural scenario that deprived Supreme Court of discretion to grant leave to amend the second amended complaint.
Given this Court's outright dismissal of the claims based on a finding of lack of standing, there was no action pending when plaintiffs moved for leave to file the third amended complaint. Thus, the trial court lacked any discretion or authority to grant plaintiffs such leave, where we had properly dismissed the [*7]second amended complaint before plaintiffs filed the motion to amend (see Carpenter v Plattsburgh Wholesale Homes, Inc., 83 AD3d 1175, 1177 [3d Dept 2011] [leave to amend denied where no action pending following dismissal]). That no judgment had been entered by the Clerk, as mandated by our dismissal order, is of no moment. The entry of a subsequent judgment is a mere ministerial act (see Clapp v Hawley, 97 NY 610 [1885]; Campos v New York City Health & Hosps. Corp., 307 AD2d 785 [1st Dept 2003]). Our dismissal order was binding on the parties until vacated or set aside on further appeal (see Matter of Murray v Goord, 298 AD2d 94, 97 [1st Dept 2002], affd 1 NY3d 29 [2003]). There was no further appeal of our decision. Hence, under the circumstances, plaintiffs' only remedy was to commence a new action, which they failed to do.
The dissent posits that leave to amend the dismissed pleading was properly granted because defendants did not enter judgment. Although not explicitly stated, the dissent essentially argues that plaintiffs' case cannot be terminated by an unconditional dismissal order because a "judgment" was not entered by defendants, dismissing the action.[FN4] The dissent fails to cite any legal support for this contention. Moreover, the dissent's unsupported contention is contrary to applicable case law.
Indeed, it has long been settled that an order of the Appellate Division which affirms or, on reversal or modification, directs the dismissal of the complaint in an action, without leave to replead, is a final determination even if the dismissal is not based on the merits of the controversy. That is the approach that the Court of Appeals has consistently taken in sustaining the finality of dismissal orders not on the merits, including those where, like here, the plaintiff lacked legal capacity to sue (see MacEllven v Lincoln Rochester Trust Co., 4 NY2d 734 [1958]; Hirson v United Stores Corp., 289 NY 564 [1942]; Hastings v Byllesby & Co., 286 NY 468 [1941]; Ranzal v Hood, 277 NY 695 [1938]; cf. Security-First Natl. Bank v Lloyd-Smith, 284 NY 795 [1940] [Dismissal because plaintiff was not the real party in interest]). The order dismissing the complaint is held to be final because it completely disposes of the particular action, and the fact that it is not a decision on the merits is held not to detract from its finality (see e.g. Matter of Mount Pleasant Cottage School Union Free School Dist. v Sobol, 78 NY2d 935 [1991] [order dismissing the complaint because a necessary party defendant had not been joined]).
Thus, contrary to our dissenting colleagues' allegations, a judgment need not be entered for the case to be conclusively adjudicated (see e.g. Aspen Specialty Ins. Co. v Ironshore Indem., Inc., 144 AD3d 606 [1st Dept 2021] [declaratory judgment action no longer pending where it had been marked as disposed]; Burns v Pace Univ., 25 AD3d 334 [1st Dept 2006], lv denied 7 NY3d 705 [2006] [action deemed "terminated" pursuant to CPLR[*8]§ 205(a) when the court dismissed the action based on the plaintiff's failure to appear at the court's old case calendar and the entry of the subsequent judgment in the case was a mere ministerial act]; Pi Ju Tang v. St. Francis Hosp, 37 AD3d 690 [2nd Dept 2007] [same]). Where an Appellate Division remits to the trial court below solely for the specified purpose of entering a final order, decree or judgment pursuant to the Appellate Division's direction, the order is held to be final, and the remission in such a case is considered one for purely "ministerial" action (see e.g. Harvey v Members Employees Trust for Retail Outlets, 96 NY2d 99, 103 n.1, [2001]; Spiegel v Ferraro, 73 NY2d 622 [1989]; Matter of Schneiderl, 298 NY 532 [1948]).
The Court of Appeals considers an Appellate Division dismissal order to be final  even where dismissal is not on the merits and even where no judgment has been entered. Our dissenting colleagues take the untenable position that whether the Court of Appeals considers an Appellate Division dismissal order final is irrelevant as to whether a case is still pending at the trial level, "because the Appellate Division is not bound by this jurisdictional requirement." If, from the perspective of the Court of Appeals, a case is no longer active and pending, and thus satisfies the finality requirement on civil matters, it makes no sense  not just logically but as a matter of public policy, court efficiency and consistency  that a case still would be considered pending before any other court, including the trial court.
Indeed, our dissenting colleagues offer no case directly on point to support such an extraordinary proposition  that a trial court is not bound by the Appellate Division's unconditional dismissal order. Instead, the dissent proffers an irrelevant statement of the law: "It is only after a decision has been rendered on the merits that 'new life' may not be breathed into it through permissive pleading, even upon a showing of merit." That is not, however, the issue before this Court. No one disputes that an Appellate Division's unconditional order that dismisses a case for non-merit reasons could be revived. What is in dispute here is whether such a dismissed case can be "breathed new life" by moving to amend a pleading that had been dismissed. The clear answer is no.
To be sure, we agree with our dissenting colleagues that the prompt entry of a judgment provides administrative conveniences and benefits, in certain cases requiring further directives from the court. What we cannot and will not ignore, however, is the basic principle that an order of the Appellate Division unconditionally dismissing a complaint is a clear and unequivocal directive that the case is no longer active and pending. Such a dismissal order becomes effective as of the date of the order, not the later, unfixed date when a ministerial judgment is entered, if ever.
In fact, the CPLR takes into account the practicality that [*9]the entry of judgment based upon an unconditional dismissal order is a simple ministerial act. Specifically, in 1997, the legislature passed an amended CPLR 5501(c)[FN5] (L. 1997, ch 474) to add what is now its second sentence. Pursuant to the amendment, an appeal from an order directing judgment on a motion addressed to the pleadings is deemed to be an appeal from an ensuing judgment entered on the order (see Siegmund Strauss, Inc. v East 149th Realty Corp., 81 AD3d 260, 267 [1st Dept 2010], mod on other grounds 20 NY3d 37 [2015]). Because the judgment adds nothing to an unconditional order, it is thus unnecessary for the appellant to take a separate appeal from the judgment. The pending appeal from the order is automatically "deemed" to be such an appeal (see 60 Siegel's Practice Review 3, "Deeming" Appeal from Dismissal Order To Specify Later Judgment Too [Aug 1997]).
Ultimately, the finality of an Appellate Division's dismissal order should be derived from clear rule of law and not depend on the vagaries of litigants or individual court clerks. Clear rule of law provides individuals with certainty, clarity, and predictability as to when a case is no longer active. Vesting court clerks with the ultimate wherewithal to decide when a case is no longer active and pending, after an order of the Appellate Division has dismissed the complaint, undermines the principal of finality which is essential to the orderly operation of our judicial system.
The dissent grossly mischaracterizes the majority's position. Contrary to the dissent's allegations, nowhere in our opinion does the majority argue "that entry of judgment can always be disregarded as a 'simple ministerial act.'" In fact, the dissent attributes this absurd position to the majority only by selectively quoting from the majority's opinion. What the majority actually says is "that the CPLR takes into account the practicality that the entry of judgment based upon an unconditional dismissal order is a simple ministerial act." The dissent conspicuously ignores our acknowledgement that "the prompt entry of a judgment provides administrative conveniences and benefits, in certain cases requiring further directives from the court" (emphasis added), but that "an order of this Court unconditionally dismissing a complaint is a clear and unequivocal directive that the case is no longer active and pending"(emphasis added). This is a statement that the dissent cannot and does not refute.
Second, the statute of limitations had already expired by the time plaintiff members sought leave to amend the second amended complaint. Even if we were able to disregard the plaintiff members procedural standing obstacle that the complaint sought to amend, the expiration of the statute of limitations posed a second procedural obstacle that deprived Supreme Court of discretion to grant leave to amend. This action involves a Delaware LLC and an operating agreement governed by Delaware Law. Under Delaware law, the statute [*10]of limitations applicable to this case (breach of contract and breach of fiduciary duty) is three years (see 10 Del C § 8106; Wal-Mart Stores, Inc. v AIG Life Ins. Co., 860 A2d 312, 319 [Del 2004]). As the motion court held, most of the claims here accrued in May 2013, while others accrued before plaintiff members commenced this action in 2016. While the initial cause of action was timely commenced in 2016, by the time this Court issued the dismissal order in March 2020, the claims asserted in the proposed third amended complaint were time-barred.
CPLR 205(a) is the saving provision for a plaintiff, as here, whose action has been dismissed without reaching the merits. If the original statute of limitations has expired by the time the action is dismissed, as here, CPLR 205 (a) allows the plaintiff a fresh six months for a new action, measured from the "non-merits" dismissal. "The six-month period in CPLR 205(a) is not a limitations period but a tolling provision, which has no application where . . . the statute of limitations has not expired at the time the second action is commenced" (Bonilla v Tutor Perini, Corp., 134 AD3d 869, 870 [2d Dept 2015]). The statute has a batch of very specific exceptions; by express statutory language, CPLR 205(a) does not apply when: (1) the termination of the initial action was by voluntary discontinuance; (2) the termination was a dismissal due to the failure to obtain personal jurisdiction over the defendant or due to the neglect of the plaintiff to prosecute the action; or (3) the termination was a final judgment on the merits of the case. Basically, the statute is intended to grant a six-month grace period to commence a new and proper action, when it had originally been timely commenced but, as here, was dismissed due to a technical defect that can be remedied in the new action (see U.S. Bank N.A. v DLJ Mtge. Capital, Inc., 33 NY3d 72, 78 [2019]; George v Mt. Sinai Hosp., 47 NY2d 170, 177 [1979]).
Pursuant to CPLR 205(a), the six-month period within which to commence a new action is measured from the termination of the prior action. The action is terminated when the plaintiff has exhausted his or her rights. Absent an appeal, the six-month period begins to run on the date when the prior action is dismissed (see Pi Ju Tang v St. Francis Hosp., 37 AD3d 690). Conversely, the prior action will be considered terminated only at the point when appeals as of right are exhausted (see Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C., 5 NY3d 514, 519 [2005]). However, a party may not forestall the commencement of the statutory six-month period merely by continuing to pursue discretionary appellate review (see Lehman Bros. v Hughes Hubbard & Reed, 92 NY2d 1014, 1016-1017 [1998]). Thus, only where an appeal is taken as a matter of right or where discretionary appellate review is granted upon the merits is the six-month period extended until such appellate review process is terminated[*11](id.)
In this case, for some unexplained reason, plaintiff members never took advantage of CPLR 205(a)'s six-month extension to commence a new action, even though by dismissing the second amended complaint without prejudice, we effectively permitted plaintiffs to avail themselves of the benefits of CPLR 205(a). Instead, after we issued the dismissal order on March 3, 2020, plaintiffs moved before the Appellate Division for reargument and leave to appeal to the Court of Appeals on June 5, 2020. We denied reargument and leave to appeal on August 13, 2020. Unfortunately for plaintiffs, the unsuccessful motions for reargument and leave to appeal did not extend the six-month period for commencement of a new action (see Lehman Bros., 92 NY2d at 1017). The six-month period began to run when we issued our dismissal order on March 3, 2020. It was not until more than nine months later, on January 8, 2021, that plaintiffs moved before the motion court for leave to amend the second amended complaint that we had already dismissed, and it was not until another five months later, on June 8, 2021, that the motion court granted plaintiffs leave to amend the second amended complaint.[FN6] By that time, however, the period to commence a new action pursuant to CPLR 205(a) had expired. Significantly, under these circumstances, leave to amend could not have been granted to revive an action that was already timed-barred (see Lehman Bros. v Hughes Hubbard & Reed, 92 NY2d at 1017; Long v Quinn, 234 AD2d 520, 522 [2d Dept 1996]). [The plaintiffs could not avail themselves of the six-month extension afforded by CPLR 205(a) since the third action was not commenced until one year after the automatic dismissal of the second action]). A court is without the power to extend the statute of limitations (see Lehman Bros. v Hughes Hubbard & Reed, 92 NY2d at 1017; Long v Quinn, 234 AD2d at 522); see also Dorst v Eggers Partnership, 265 AD2d 294, 295 [2d Dept 1999]).
Finally, the fact that defendants filed a counterclaim on July 18, 2019, does not act to revive plaintiffs' time-barred second amendment complaint. The applicable statute, CPLR 203(d), commonly known as the counterclaim rule, provides in pertinent part:
"A defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed, except that if the defense or counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed."
Accordingly, CPLR 203(d) will operate to toll the statute of limitations on a defendant's counterclaim at the moment a plaintiff initially files process with the clerk. If the counterclaim would have been timely on the date of a plaintiff's filing, it will be deemed timely regardless of the date of service of [*12]the pleading in which the counterclaim is asserted. If the counterclaim would have been untimely on the date of plaintiff's filing, the counterclaim is partially lost. CPLR 203(d) allows a defendant to assert an otherwise untimely claim provided that it arose out of the same transactions alleged in the complaint, but only as a shield for recoupment purposes, and does not permit the defendant to obtain affirmative relief (see Balanoff v Doscher, 140 AD3d 995, 996 [2d Dept 2016]; DeMille v DeMille, 5 AD3d 428, 429 [2d Dept 2004]). That is, an untimely counterclaim could only serve as a defense that is "predicated on [an] act or fact growing out of the matter constituting the cause or ground of the action brought" by the plaintiffs (Matter of SCM Corp. [Fisher Park Lane Co.], 40 NY2d 788, 791 [1976]).
Here, defendants' filing of a counterclaim on July 18, 2019, does not act to revive plaintiffs' time-barred second amendment complaint because the second amendment complaint was timed-barred at the time defendants filed their counterclaims as part of their answer filed on July 18, 2019. As aforementioned, under Delaware law the statute of limitations applicable to this case (breach of contract and breach of fiduciary duty) is three years (see 10 Del C § 8106; Wal-Mart Stores, Inc. v AIG Life Ins. Co., 860 A2d at 319). As the motion court held, most of the claims here accrued in May 2013, while others accrued before plaintiff members commenced this action in May 2016. Thus, by the time defendants filed a counterclaim on July 18, 2019, the second amendment complaint was time-barred. Even if plaintiffs' claims arose out of the same transactions alleged in the counterclaim, this did not permit plaintiff to obtain affirmative relief based on the untimely claims. An untimely claim could only serve as a defense that is "predicated on [an] act or fact growing out of the matter constituting the cause or ground of the action . . . . " (Matter of SCM Corp. [Fisher Park Lane Co.], 40 NY2d 788, 791 [1976]).
In sum, in view of the procedural posture of this case, we find that Supreme Court did not have discretion to grant leave to amend a complaint that had already been dismissed by this Court. Following our March 2020 dismissal order, plaintiffs could have cured the deficiency of lack of capacity and then would have been entirely free to commence a new action, within CPLR 205(a)'s six-month window. Plaintiffs instead sought leave to reargue our March 2020 dismissal order and leave to appeal to the Court of Appeals. Plaintiffs were denied that relief. By the time plaintiffs sought to amend the second amended complaint before the motion court, the applicable three-year statute of limitations had long expired. Courts are not permitted to extend the statute of limitations. Thus, the motion court had no discretion to allow plaintiff to file a third amended complaint pursuant to CPLR 3025(b).
Whether the Court Correctly Dismissed Defendants' Counterclaims
We [*13]find that the motion court correctly granted plaintiff members' motion to dismiss defendants' counterclaims for breach of the operating agreement and declaratory relief based upon plaintiffs alleged taking of unauthorized action on behalf of the Company. Defendants failed to allege facts to show any basis for a cognizable breach of contract or non-duplicative declaratory judgment claim against the Company or plaintiff members based on the business operations of the Company or plaintiff members' efforts to pursue this litigation.
Specifically, the motion court properly dismissed Carla's first and Benedetto's first and second counterclaims seeking the payment of management fees or reimbursement of expenses under the operating agreement, given the absence of nonconclusory allegations that the Company had the net income necessary for the payment of such fees in any year, and the absence of allegations that any specified expenses were incurred. Similarly, the court properly dismissed Carla's second, third, and sixth, and Benedetto's first and fourth through ninth breach of contract and related declaratory judgment counterclaims concerning the various steps plaintiff members have taken to prosecute this action and seeking attorneys' fees and litigation expenses. Such claims are deficient because the Cicos do not allege any breach of contract damages separate and apart from those legal fees and expenses recoverable on the breach of contract claims, and the legal fees sought are either not recoverable by the Cicos as a remedy for any of the alleged contract breaches or are sought prematurely as prevailing party recovery. Finally, the court properly dismissed Carla's seventh counterclaim for indemnity from the Company for the claims being brought against her by the Company, as the operating agreement's indemnity provision applies to claims by third parties and does not otherwise apply to the claims asserted against defendants.
Conclusion
Accordingly, the order of the Supreme Court, New York County (Jennifer G. Schecter, J.), entered June 8, 2021, which, insofar as appealed from as limited by the briefs, granted plaintiffs' motions for leave to file a third amended complaint and to dismiss defendants' counterclaims for breach of contract and a declaratory judgment, should be modified, on the law, to deny plaintiffs' motion for leave to file a third amended complaint, and otherwise affirmed, without costs.
All concur except Acosta, P.J. and Moulton, J., who dissent in an Opinion by Moulton, J.

MOULTON, J. (dissenting).
 

I respectfully dissent. In view of the special circumstances presented in this case, I disagree with the majority's conclusion that Supreme Court abused its discretion in granting plaintiffs' motion for leave to file a third amended complaint. I also disagree with the majority's conclusion that the court correctly dismissed defendants Benedetto and Carla Cico's counterclaims in toto.
This appeal concerns a dispute among members [*14]of a Delaware limited liability company concerning the development of property on Manhattan's Upper East Side. In a prior appeal, this Court reversed the denial of defendants' motions to dismiss the amended complaint and the grant of plaintiffs' cross motion for leave to file a second amended complaint and directed the Clerk to enter judgment accordingly (Favourite Ltd. v Cico, 181 AD3d 426 [1st Dept 2020]). We did so on the basis that Upper East Side Suites, LLC (the Company) lacked capacity or standing to sue based on a 2018 vote authorizing this litigation that was taken after plaintiffs obtained a 2018 certificate of revival for the Company (id. at 426-427). However, we recognized that "the Company could, in theory, be revived under section 18-1109(a) [of the Delaware Limited Liability Company Act]" (id. at 427; see also Pullman Group v Prudential Ins. Co. of Am., 297 AD2d 578, 578 [1st Dept 2020] ["[s]ince a dismissal premised on lack of standing is not a dismissal on the merits for res judicata purposes, plaintiff is not precluded from reasserting the same claims based on newly conferred rights which cure the prior lack of capacity"]).
On December 11, 2020, to cure this timing defect, plaintiffs filed with the Delaware Secretary of State a certificate of correction to nullify the 2018 certificate of revival. Plaintiffs then filed a new certificate of revival based on the 2018 vote.
Instead of filing a new action, plaintiffs moved in November 2020 to dismiss defendants' counterclaims under CPLR 3211(a)(7). Defendants' counterclaims were still pending in the action because defendants filed their amended answers with counterclaims during the pendency of the prior appeal. Plaintiffs also moved in January 2021 for leave to file the third amended complaint.
Defendants never submitted a proposed judgment to the Clerk and never took any steps to have a favorable judgment entered.
By order dated June 8, 2021, Supreme Court granted both motions and defendants appealed.
In my view, Supreme Court did not abuse its discretion in granting plaintiffs' motion for leave to file the third amended complaint. To support their position that the court erred in granting leave, defendants rely on an overbroad reading of our case law to argue that a complaint cannot be amended after dismissal because there is nothing left to amend. Every case cited by defendants involves a motion to amend a complaint that is made after a dismissal on the merits (see Tanner v Stack, Sup Ct. NY County, Dec 19, 2018, Ramos, J., index No. 153234/18 [the motion court denied the plaintiff leave to amend the complaint because it previously "dismissed this case with prejudice"], affd 176 AD3d 429 [1st Dept 2019]; Panagoulopoulos v Carlos Ortiz Jr., MD, P.C., 143 AD3d 792, 792-793 [2d Dept 2016] [the plaintiffs' motion for leave to amend the complaint was properly denied because the motion court previously dismissed the complaint for, among other reasons, failure to state a claim for [*15]wrongful termination of an at-will employment]; Amaranth LLC v National Australia Bank Ltd., 40 AD3d 279, 280 [1st Dept 2007] [the plaintiffs' motion for leave to amend the complaint was properly denied because it was made subsequent to the grant of summary judgment dismissing the complaint], lv dismissed and denied 9 NY3d 888 [2007]; Kazakhstan Inv. Fund v Manolovici, 2 AD3d 249, 250 [1st Dept 2003] [the plaintiff's motion for leave to amend the complaint was properly denied because the complaint had been previously dismissed as time-barred]).
The majority agrees with defendants' position that the court lacked discretion to grant plaintiffs leave to amend based on our prior dismissal of the action, relying on the inapposite case Carpenter v Plattsburgh Wholesale Homes, Inc. (83 AD3d 1175 [3d Dept 2011]). In Carpenter, the Third Department concluded that the motion court had correctly dismissed the plaintiffs' action based on a failure to state a cause of action and had correctly denied the plaintiffs' motion for leave to file an amended complaint (id.). By contrast, our prior decision did not find that the complaint failed to state a cause of action and we recognized that the Company could be revived and then continue to assert its claims against defendants.
It is only after a decision has been rendered on the merits that "new life may not be breathed into it through permissive repleading, even upon a showing of merit" because "[t]he conclusive effect of a judgment on the merits may not be fatally undermined . . . by allowing the party whose cause is dismissed a second chance to litigate the matter" (Buckley & Co. v City of New York, 121 AD2d 933, 935 [1st Dept 1986], lv dismissed 69 NY2d 742 [1987]). Here, it is undisputed that we did not dismiss the action on the merits.
While the majority notes that it is of paramount concern that parties adhere to our orders, which are binding until vacated or set aside on further appeal, here both plaintiffs and defendants failed to adhere to our prior order. Although plaintiffs did not commence a new action after we dismissed their complaint in the prior appeal, no judgment was ever entered despite our directive. Entry of a judgment is critical because "[a] judgment is the law's last word in a judicial controversy, it being the final determination by a court of the rights of the parties upon matters submitted to it in an action or proceeding" (Towley v King Arthur Rings, 40 NY2d 129, 132 [1976]).
Defendants offer no explanation in this appeal for failing to submit a proposed judgment during the 14 months between our dismissal of plaintiffs' complaint and the motion court's decision to grant plaintiffs leave to serve the third amended complaint. Defendants' failure to do so left this action pending, along with defendants' counterclaims, which were not a subject of the prior appeal (see Chase Home Fin., LLC v Adago, 2018 WL 10580184, at *2 [Sup Ct, NY County 2018] ["the court is [not] without discretion [*16]to entertain this [CPLR 306-b] motion because this case was dismissed by Special Referee Liebman in his 7/1/17 decision/order. . . As plaintiff correctly points out, a final judgment has not yet been entered in this case" and therefore, the action is "deemed pending"], affd 171 AD3d 533 [1st Dept 2019]).
The majority minimizes the fact that defendants disregarded our prior order directing entry of judgment by pointing out that the Clerk's act of entering a judgment is a ministerial one. Clapp v Hawley (97 NY 610 [1885]), cited by the majority, does not compel a different result. In Clapp, the plaintiffs served the defendants' attorneys with a notice of entry of a judgment and attached a copy of the judgment in the same form as the judgment filed in the Clerk's office, except that it did not bear the judge's signature (id. at 614). In concluding that the defendants' appeal was untimely, the Court reasoned that the judge's signature was not required for the notice of entry to be valid and commented that "[t]he entry of judgment is the act of the clerk, and he might himself have prepared and entered it, or he could adopt the form prepared by the plaintiffs' attorney" (id. at 615).
In our court system litigants must take steps to notify the Clerk to enter a judgment and submit the requisite paperwork (see e.g. Guide to the Form of Orders and Judgments, Third Edition at 40, available at www1.nyc.gov ["[i]f the court has issued an order directing the Clerk to enter judgment . . . the prevailing party will prepare a form of judgment and submit it to the Judgment Clerk"]).[FN7] These steps are essential for the efficient operation of our busy trial courts. Thus, contrary to the majority's characterization, my position does not depend on the "vagaries of the individual court clerks" but on the steps taken by the litigants.
The majority cites CPLR 5501(c) for the proposition that an appellant need not take a separate appeal from the judgment to obtain review of certain orders because "the judgment adds nothing to the order." The legislature has never advanced such an explanation for that provision of the CPLR. Rather, the legislature amended CPLR 5501(c) to rectify a portion of the "procedural problem[s]" created by Matter of Aho (39 NY2d 241, 248 [1976]), which held that the right to appeal from an intermediate order terminates with the entry of a final judgment (Robertson v Greenstein, 308 AD2d 381, 382 [1st Dept 2003], lv dismissed 2 NY3d 759 [2004]). The amendment, which is limited to an appeal from an order directing summary judgment or an order directing judgment on a motion addressed to the pleadings, was only a "partial measure of relief" (Siegmund Strauss, Inc. v East 149th Realty Corp., 81 AD3d 260, 267 [1st Dept 2010], mod on other grounds 20 NY3d 37 [2012]). Thus, contrary to the majority's position that entry of judgment can always be disregarded as a "simple ministerial act," the Court of Appeals decision in Matter of Aho and CPLR 5501(c) illustrates [*17]that entry of judgment still retains critical importance with respect to certain intermediate orders.
The majority additionally relies on Aspen Specialty Ins. Co. v Ironshore Indem. Inc. (144 AD3d 606 [1st Dept 2016]) for the proposition that a judgment need not be entered for the case to be "conclusively adjudged" because a case is no longer pending after it is marked as disposed.[FN8] Here, however, Supreme Court never marked the litigation disposed. To the contrary, the court found that plaintiffs should be able to proceed with their litigation. Moreover, unlike this case, Aspen Specialty Ins. Co. did not involve pending counterclaims.
The majority further maintains that Supreme Court had no power to grant plaintiffs leave to amend their complaint after the prior non-merits dismissal by analogizing to the approach taken by the Court of Appeals regarding the finality of non-merits dismissal orders. However, under New York Constitution art. VI, § 3(b)(1), (2), (6), finality is a civil jurisdictional requirement of the Court of Appeals. The Appellate Division is not bound by this jurisdictional requirement.
I agree with the majority that finality is an important concept in our judicial system. However, so too is the discretion with which our judicial system vests our motion courts. Therefore, under the unusual facts of this case, where neither plaintiffs nor defendants complied with our order, I believe that Supreme Court did not abuse its discretion by reasoning that "[i]t would make no sense, under the circumstances, for plaintiffs to have commenced another separate action under a different index number and then to have moved to consolidate it with this one when this one has always remained active and pending."
In concluding that the litigation always remained active and pending, Supreme Court reasoned that "[a] new action would have been timely pursuant to CPLR 205(a) and Executive Order 202.8." The majority disagrees with this conclusion, positing that the court lacked the power to "revive an action that was already timed-barred."
This argument was raised only cursorily and disingenuously by defendants on appeal. In their brief on appeal defendants, like the majority, avoid addressing the court's finding that Executive Order 202.8 tolled the six-month period to commence a new action under CPLR 205(a). On appeal, defendants unpersuasively assert that the six-month period ran from February 21, 2018 - not March 20, 2020, as they argued below, thereby skirting Executive Order 202.8.
In any event, I disagree with the majority's conclusion that plaintiffs' claims were time-barred for two reasons. When plaintiffs moved for leave to file a third amended complaint against the same defendants, they sought only to add a factual recitation of the steps taken to revive the Company. They did not seek to add new causes of action for breach of contract or breach of fiduciary duty or to add new theories of liability (see e.g. American Entrance Servs., Inc[*18]. v Roeder, 129 AD3d 618, 618 [1st Dept 2015] [court properly denied the plaintiffs' motion to amend their complaint to add a time-barred cause of action for trespass because the claim pleaded in the initial complaint was for conversion of property which occurred eight years before the action was filed]). Here, the causes of action for breach of contract and breach of fiduciary duty were already pleaded in the second amended complaint and, as noted by the majority, the court had previously found that "the action is mostly not time-barred" (Favourite Ltd. v Cico, 2019 NY Slip Op 31768[U], *4 [Sup Ct, NY County 2019]). Thus, as the majority concedes, the initial claims were timely commenced in 2016. Because plaintiffs were not seeking to add new causes of action or new theories of liability against defendants, the claims pending before the motion court were not time-barred at the time that it granted plaintiffs leave to amend their complaint.
Moreover, had plaintiffs actually commenced a new action in January 2021 and filed a new complaint, the new action would have been timely under CPLR 205(a).[FN9] The majority reasons that the claims were time-barred because "[i]t was not until more than nine months [after our March 20, 2020 dismissal] on January 8, 2021, that plaintiffs moved before the motion court for leave to amend the second amended complaint . . . . By that time, however, the period to commence a new action pursuant to CPLR 205(a) had expired."[FN10]
This is not the case because, as the motion court soundly concluded, "[a] new action would have been timely pursuant to CPLR 205(a) and Executive Order 202.8." On Saturday March 7, 2020, four days after this Court's decision, former Governor Cuomo issued Executive Order 202 "Declaring a Disaster Emergency in the State of New York" as the result of the COVID-19 pandemic. Then, on March 20, 2020, he issued Executive Order 202.8, (which was extended by similar orders each month through November 3, 2020) tolling the time period to commence a new action. Executive Order 202.8 provides, in relevant part, that during the COVID-19 pandemic "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including . . . the Civil Practice Law and Rules . . . is hereby tolled" (9 NYCRR 8.202.8; Matter of Oustatcher v Clark, 198 AD3d 420, 421-422 [1st Dept 2021] [Executive Order 202.8 tolls legal "process[es] or proceeding[s] as prescribed by the procedural laws of the state . . . such as the CPLR and CPL"]; Matter of People v Northern Leasing Sys., Inc., 193 AD3d 67, 78 [1st Dept 2021] ["CPLR deadlines were suspended due to the COVID-19 pandemic"], lv dismissed 37 NY3d 1088 [2021]).[FN11]
Accordingly, Supreme Court correctly reasoned that had plaintiffs commenced a new action in January 2021, the action would have been timely in light of Executive Order 202.8. Thus, in my view, nothing prevented [*19]Supreme Court from exercising its discretion to grant plaintiffs leave to file the third amended complaint under the extremely unusual facts of this case.
Nor was the proposed pleading palpably insufficient, as defendants contend. Defendants have not established, through conclusive documentary evidence, that the votes of Sirio Srl, Aiebus S.A., and Anchor International Holding Limited should not have been counted toward the 2018 vote by the members. Contrary to defendants' argument, the 2018 resolution and the written consents authorizing the litigation and the second amended complaint are broad enough to authorize plaintiffs' motion for leave to file the third amended complaint and their filing of the December 11, 2020 certificates. Notably, the only difference between the second amended complaint and the third amended complaint is a factual recitation of the steps taken to revive the Company. Further, our prior decision did not hold that the Company lacked capacity or standing to sue on the ground that the certificate of revival was filed by a single member of the Company, as defendants maintain. Rather, our decision found that plaintiffs lacked capacity or standing to sue because the authorizing vote was taken after the certificate of revival was filed.
I also disagree with the majority's conclusion that Supreme Court correctly dismissed the Cicos' counterclaims in toto. I agree that Supreme Court correctly dismissed the bulk of defendants' counterclaims.[FN12] The court correctly found that Carla Cico's first counterclaim and Benedetto Cico's second counterclaim seeking the payment of management fees and expenses were not viable for the reasons stated by the majority. The court correctly dismissed Benedetto Cico's first counterclaim seeking damages against the Company because no damages were alleged apart from legal fees, which are not recoverable under the American Rule.
The court also correctly dismissed Carla Cico's second counterclaim and Benedetto Cico's fourth, sixth, and eighth counterclaims seeking damages against the individual plaintiffs under section 5.19 of the Company's operating agreement, although not for the reasons stated by the court. As is relevant here, section 5.19, entitled "Members Have No Agency Right," provides in relevant part that "[a]ny Member who takes any action or otherwise contractually obligates the Company in violation of this Section shall be solely responsible for any loss or expense incurred as a result of the unauthorized action and shall indemnify and hold the Company harmless, with respect to any subsequent loss or expense." Section 5.19 is for the benefit of the Company, not for the benefit of any individual member or former manager.
Finally, the court correctly dismissed Carla Cico's seventh counterclaim for indemnity for the reasons explained by the majority.
However, unlike the majority, it is my view that Supreme Court erred in dismissing Carla Cico's sixth counterclaim and Benedetto Cico's twelfth [*20]counterclaim for prevailing party attorney's fees under section 11.12 of the operating agreement. Notably, when plaintiffs moved to dismiss defendants' counterclaims, they did not seek a declaration that they were the prevailing party and defendants did not seek such a declaration when they opposed the motion. Therefore, it was error to dismiss those counterclaims as premature.
In my view, Supreme Court also incorrectly dismissed Carla Cico's third and fifth counterclaims and Benedetto Cico's fifth, seventh and ninth counterclaims for declaratory relief on the basis that they were "duplicative" of defendants' breach of contract claims. To the extent that the counterclaims seek to declare that certain resolutions, certificates, records of votes, and other corporate documents are null, void, and unenforceable, they are not duplicative of the Cicos' breach of contract counterclaims seeking money damages (see 159 MP Corp. v Redbridge Bedford, LLC, 160 AD3d 176, 193 [2d Dept 2018] ["declaratory judgment actions and breach of contract actions are different legal concepts involving different alleged harm and different forms of redress" and "both grounds may be pursued by a plaintiff in a single complaint, as CPLR 3014 clearly permits the pleading of alternative and inconsistent causes of action"], affd 33 NY3d 353 [2019]). The case relied upon by the motion court is inapposite (see Atlas MF Mezzanine Borrower, LLC v Macquarie Tex. Loan Holder LLC, 174 AD3d 150, 163 [1st Dept 2019] [the plaintiff's cause of action for a declaration that a sale was conducted in a commercially unreasonable manner was duplicative of the plaintiff's cause of action based on a violation of UCC 9-610]).
Accordingly, I would modify Supreme Court's order to deny plaintiffs' motion to dismiss Carla Cico's sixth counterclaim and Benedetto Cico's twelfth counterclaim for prevailing party attorney's fees, deny plaintiffs' motion to dismiss Carla Cico's third and fifth counterclaims and Benedetto Cico's fifth, seventh and ninth counterclaims to the extent that they seek to declare that certain resolutions, certificates, records of votes, and other corporate documents are null, void and unenforceable, reinstate those counterclaims, and would otherwise affirm.
Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered June 8, 2021, modified, on the law, to deny plaintiffs' motion for leave to file a third amended complaint, and otherwise affirmed, without costs.
Opinion by Renwick, J.P. All concur except Acosta, P.J. and Moulton, J. who dissent in an Opinion by Moulton, J.
Acosta, P.J., Renwick, Moulton, Scarpulla, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 21, 2022

Footnotes

Footnote 1: CPLR 3025 authorizes the amendment of a pleading in an action, including the complaint of the plaintiff. According to subsection (b) of CPLR 3025, leave of court is needed to amend a pleading once issue has joined.

Footnote 2: Capacity "concerns a litigant's power to appear and bring its grievance before the court" (Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 155 [1994]).
Footnote 3: CPLR 205(a) is the coveted time extender for a plaintiff whose action has been dismissed without reaching the merits. CPLR 205(a), a saving statute, allows a plaintiff to commence a new action on the same cause of action within six months after the cessation of the original action even though the statute of limitations would have since run.

Footnote 4: Additionally, such a process, would lead to the absurd result of a party, and not the Appellate Division determining whether and when a case is dismissed, according to when the party choses to enter the judgment.

Footnote 5: CPLR 5501(c) states, in pertinent part, "The notice of appeal from an order directing summary judgment, or directing judgment on a motion addressed to the pleadings, shall be deemed to specify a judgment upon said order entered after service of the notice of appeal and before entry of the order of the appellate court upon such appeal, without however affecting the taxation of costs upon the appeal."
Footnote 6: The dissent argues that "Executive Order 202.8 tolled the six-month period to commence a new action under CPLR 205(a)" and thus plaintiffs had until March 20, 2021, to commence a new action pursuant to CPLR 205(a). Even if that were so, plaintiffs failed to take advantage of the toll and failed to commence any new action by that time. Instead, the motion court improperly granted plaintiff leave to amend the second complaint by an order dated June 8, 2021. The motion court had no authority to grant leave to amend because the court was without the power to extend the statute of limitations.

Footnote 7:The judgment would have also required the severance of defendants' counterclaims in order for defendants to continue with them - something that Supreme Court, not the Clerk, has the power to do. Severance would be required because "without a severance there can be only one judgment entered in a civil action" (Bennett v Long Is. Light. Co., 262 AD2d 437, 438 [2d Dept 1999]; see also Guide to the Form of Orders and Judgments, Third Edition at 8-9 and 24-29).
Footnote 8:Aspen Specialty Ins. Co. affirmed the motion court's determination that the plaintiff was entitled to a declaration that its named insured was an additional insured under the defendant's policy (144 AD3d at 607).The motion court's disposal marking is discussed in the factual and procedural background section of Aspen Specialty Ins. Co. v RLI Ins. Co., Inc., (194 AD3d 206, 210-211 [1st Dept 2021]). That case also cites Aspen Specialty Ins. Co. v Ironshore Indem. Inc. (167 AD3d 420 [1st Dept 2018], lv dismissed 33 NY3d 1049 [2019]), which affirmed the motion court's determination that the defendant's renewal motion, based on a change in the law, was untimely.

Footnote 9:As the majority explains, CPLR 205 is a savings statute that can revive an action that was dismissed without reaching the merits. It allows a plaintiff to commence a new action on the same transactions or occurrences as the prior timely commenced action if the new action is commenced within six months after the "termination" (CPLR 205[a]).
Footnote 10:I agree with the majority that, for purposes of CPLR 205(a), the date of the "termination" is March 3, 2020, the date of our prior decision. However, as explained infra, a new action would have been timely under Executive Order 202.8.

Footnote 11:The majority points to the date that Supreme Court issued its decision, arguing that by that time "the toll expired." However, the statute of limitations had not expired when plaintiffs moved to amend their complaint on January 8, 2021, which is the relevant date. The date that Supreme Court issued its decision is irrelevant to the court's reasoning that had plaintiffs commenced a new action on January 8, 2021, they would have been well within six months of our dismissal order because the period from March 20, 2020 through November 3, 2020 would be excluded from the timeliness calculation under the Executive Orders.

Footnote 12: Defendants have abandoned any arguments regarding the court's dismissal of Carla Cico's fourth and eighth counterclaims and Benedetto Cico's third, tenth and eleventh counterclaims, which are not addressed in their briefs (see Furlender v Sichenzia Ross Friedman Ference LLP, 79 AD3d 470 [1st Dept 2010]).